Ordean **ROBINSON**, Plaintiff,

v.

**REGIONS FINANCIAL CORPORATION,**
Defendant.

No. CIV.A. 02–T–012–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 3, 2003.

Julian L. McPhillips, Jr., Kenneth Jay Shinbaum, Karen Sampson Rodgers, Aaron J. Luck, McPhillips, Shinbaum & Gill, Montgomery, AL, for Ordean Robinson.

Charles B. Paterson, Rhonda Mayse Garman, Balch & Bingham, Montgomery, AL, for Regions Financial Corp.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Ordean Robinson filed this lawsuit claiming that her employer, defendant Regions Financial Corporation, unlawfully denied her numerous promotions based on her age, race, and sex. She bases her lawsuit on: (1) 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, commonly known as Title VII of the Civil Rights Act of 1964, as amended (hereinafter Title VII); (2) 42 U.S.C.A. § 1981, the Civil Rights Act of 1866, as amended (hereinafter § 1981); (3) 29 U.S.C.A. §§ 621 through 634, commonly known as the Age Discrimination in Employment Act (hereinafter FedADEA); and (4) 1975 Ala.Code §§ 25–1–20 through 25–1–29, otherwise known as the Alabama Age Discrimination in Employment Act (hereinafter AlaADEA). The jurisdiction of this court has been properly invoked pursuant to 28 U.S.C.A. § 1331 (federal question), 28 U.S.C.A. § 1343(a)(4) (civil rights), 42 U.S.C.A. § 2000e–5(f)(3) (Title VII), 29 U.S.C.A. § 626(c)(1) (FedADEA) and 28 U.S.C.A. § 1367 (supplemental).

Currently before the court is Regions's motion for summary judgment. For the reasons that follow, the motion will be granted in part and denied in part.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Robinson is a 49–year old black female. She was hired by Regions on November 18, 1996, for the position of Accounting Clerk I, an entry level position. After a six-month probationary period, she was told her work needed improvement and was given a 30–day extension of this probationary period. At the end of this extension, Regions hired her as a full-time employee.

In the six years since Robinson's hiring, Regions has promoted her a number of times and has given her numerous increases in pay. In November 1997, Robinson received a favorable performance evaluation and, as a result, was promoted to Accounting Clerk II. Later, in April 1998, she applied for and received the position of Information Systems Coordinator I. On October 9 of that year, however, due to

poor job performance in this new position, she was given a negative job-performance review, and Regions moved her to the lower-paying position of Computer Operations Associate. In March 1999, she received a positive-performance review and a 4% pay increase.

Since that time, beginning in June 1999, Robinson has applied for 29 different positions within Regions. Regions regularly posts available positions on its computer system so that information on open positions is available to current employees. These postings include such information as job title and minimum qualifications for each position. Employees may apply for these positions by completing a bid sheet and submitting that sheet to Regions's Human Resources Department.

These applications are then screened by the Recruiting Specialist in the Human Resources Department responsible for that position. When bidding on a position is closed, the Recruiting Specialist eliminates from the pool of applicants any applicant who does not meet the minimum requirements for that position. The remaining applications are evaluated on their merits, with the more qualified candidates selected for an interview. Throughout this process, the Recruiting Specialist has no information on an applicant's age, race, or sex.

On June 25, 2001, after having applied for 26 positions since June 1999 and having received none of them, Robinson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), detailing her allegations of discrimination. In her EEOC charge, she charged Regions with discriminating against her on the basis of age, race, and sex. Based on findings that many of Robinson's claims were time-barred; that Robinson did not meet the minimum requirements for many of the positions for which she applied; and that one of the positions

for which Robinson had applied had never been filled, the EEOC decided that further investigation of Robinson's claims would likely not result in a finding that Regions violated the law, and the EEOC issued Robinson a "right-to-sue letter." After receiving this letter, Robinson filed this lawsuit on January 3, 2002. Her lawsuit includes both the 26 positions detailed in her EEOC charge and three promotion denials that occurred after she filed that charge, two of which occurred after she filed this lawsuit.

However, Robinson's opposition to Regions's motion for summary judgment addresses only her claims with regard to four positions: one position about which she made claims in her EEOC charge, two positions for which she applied after she filed that charge, and one position she applied for before filing her charge. The court therefore assumes that Robinson is abandoning her claims with regard to the 25 other instances of alleged discriminatory conduct that Regions addressed (apparently because Robinson testified about them in her deposition) in its summary-judgment memorandum, and that she is limiting her lawsuit to four claims, that is, the four instances discussed in her summary-judgment response. These four individual instances on which she was denied a promotion occurred on: February 2, 2000 (hereinafter Claim A); April 11, 2001 (hereinafter Claim B); April 24, 2002 (hereinafter Claim C); and May 13, 2002 (hereinafter Claim D).

## III. DISCUSSION

### A. Statute of Limitations

#### 1. Title VII and FedADEA

As an initial matter, Regions argues that one of Robinson's four claims is untimely to extent it is based on Title VII and the FedADEA. Regions points out that, be-

cause Robinson did not file a charge with the EEOC until June 25, 2001, any Title VII and FedADEA claims based on acts occurring before December 28, 2000, are barred.

Before suit may be brought under Title VII, an employee must, with limited exceptions that do not apply to this case, file a charge of discrimination with the EEOC against her employer within 180 days of the alleged discrimination. 42 U.S.C.A. § 2000e–5(e)(1). If the EEOC dismisses this charge, or has not acted on the charge within 180 days of its filing, an employee is entitled to a right-to-sue notice, and, upon its issuance, then has 90 days to file a lawsuit against her employer. *Id.* These time requirements also apply to claims brought under the FedADEA. 29 U.S.C.A. §§ 626(d)(1) (charge must be filed with EEOC within 180 days after alleged unlawful practice occurred), 626(e) (employee may bring civil action within 90 days of receiving notice from the EEOC).

■ Robinson does not question that any claim based on alleged discriminatory acts occurring before December 28, 2000, is barred as untimely. While her lawsuit charges Regions with "a pattern and practice" of discrimination occurring on "approximately 27" occasions, as discussed above, her opposition to Regions's summary-judgment motion addresses only four instances where Regions failed to promote her. Beyond that general "pattern and practice" language, Robinson does not identify any connection between the four individual instances in which she was denied a promotion, that would allow her to avoid the requirement that an EEOC charge be filed within 180 days of the alleged discriminatory act. Instead, Robinson's claims each relate to a discrete event (a single denied promotion), and "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, ——, 122 S.Ct. 2061, 2071, 153 L.Ed.2d 106 (2002). Therefore, Regions's allegedly discriminatory acts have only the " 'present consequence[s] of a one-time violation,' which does not extend the limitations period." *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992).

With this undisputed understanding of the law and evidence, the court holds that Robinson's Title VII and FedADEA claims survive Regions's statute-of-limitations defense only as to Claims B, C, and D.

## 2. AlaADEA

■ Regions also argues that Robinson's four claims should be barred as untimely to the extent they are based on state law, that is, the AlaADEA. This argument is more difficult to resolve. The AlaADEA, which prohibits age discrimination by employers in Alabama, has no statute of limitations of its own; rather, it adopts the limitations period provided by the FedADEA. Specifically, the AlaADEA states that "the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article." 1975 Ala.Code § 25–1–29.

■ As discussed above, the FedADEA requires that an employee file an EEOC charge within 180 days of the alleged discrimination, 42 U.S.C.A. § 2000e–5(e)(1); if the EEOC dismisses this charge, or has not acted on the charge within 180 days of its filing, the employee is entitled to a right-to-sue notice, and, upon its issuance, then has 90 days to file a lawsuit against her employer. *Id.* Absent specific exceptions not applicable here, if an employee fails to comply with these time limits, she cannot bring a lawsuit based on those

time-barred claims. Thus, what is effectively the FedADEA's statute of limitations is based on compliance with administrative filing deadlines. *See, e.g., Whaley v. Sony Magnetic Prods.*, 894 F.Supp. 1517, 1522 (M.D.Ala.1995) (DeMent, J.) ("While the timely filing of an EEOC charge is a prerequisite to commencing a lawsuit based upon the FedADEA, the 180–day time restraint is not jurisdictional. That is, failure to comply with the time limit does not 'deprive[ ] a court of subject matter jurisdiction, but [is] a requirement more in the nature of a statute of limitations that is subject to equitable tolling.' ") (citations omitted). As mentioned above, however, the AlaADEA requires no such administrative filings.

To comply with the AlaADEA, a court must resolve the problem of meeting the AlaADEA's seemingly conflicting requirements that, on the one hand, the FedADEA's statute of limitations applies to AlaADEA claims while, on the other hand, the FedADEA's administrative exhaustion requirement, which is the basis for its statute-of-limitations requirement, does not apply to such claims. In other words, the court must find a logical way to meet the AlaADEA's demand that the FedADEA's limitation requirement, but not its exhaustion requirement, be adopted when, under the FedADEA, both requirements are one and the same and seemingly inseparable.

It appears that only two courts have previously addressed this problem, reaching two different conclusions. In *Dooley v. AutoNation USA Corp.*, 218 F.Supp.2d 1270 (N.D.Ala.2002) (Blackburn, J.), the court found the AlaADEA to be "silent as to the limitations period applicable to plaintiff's claim." *Id.* at 1276. As such, it turned to Alabama general "Limitations of Actions" statute, 1975 Ala.Code § 6–2–38, and held that, because plaintiff's age-discrimination claim was "based on either common law employment discrimination principles or statutes which are silent as to the applicable limitations period," *id.* at 1277, the two-year provision in subparts (*l*)and (n) of § 6–2–38 applied to the AlaADEA. *Id.* at 1276. Unlike the court in *Dooley*, the court in *Jones v. Dillard's, Inc.*, 00–N–2646–W (Doc. no. 25) (N.D.Ala.2002) (Nelson, J.) (unpublished), noted the required parallel between the AlaADEA's statute of limitations and that of the FedADEA and, based on that parallel, found the longest possible statute of limitations for actions under the AlaADEA to be 180 days.

The court finds neither *Dooley* nor *Jones* particularly persuasive. *Dooley* ignores the AlaADEA's plain language, which provides for a statute of limitations that is the same as that in the FedADEA; neither the FedADEA nor the AlaADEA provides for a two-year statute of limitations. The *Jones* decision, too, has its flaws; namely, under *Jones*, a plaintiff who files a complaint with the EEOC and then waits for a right-to-sue letter before filing suit would, in most, if not almost all, instances, still make her FedADEA claims but have her AlaADEA claims barred by *Jones*'s 180–day statute of limitations. This is because the 180–day period does not truly reflect the time period an employee with an FedADEA claim has to file suit, that is, the time between the allegedly discriminatory act and the deadline to get her day in court; indeed, because an employee with such a claim must first exhaust her administrative remedies, she typically would be prohibited from filing a lawsuit so quickly after the allegedly discriminatory act. The 180–day period reflects only the time the employee has to initiate administrative proceedings and does not include the additional 180 days the EEOC has to consider the claim and the additional 90 days thereafter the employee has to file a lawsuit. Thus, *Jones*, too, ignores

the AlaADEA's requirement that its statute of limitations be the same as that in the FedADEA.

This court, however, believes that there is a third course by which one may resolve the conflict within the AlaADEA. Under that course, an employee would have a viable AlaADEA claim if she filed that claim either (a) within the time period that a timely parallel FedADEA claim is filed or (b) within 450 days of the act of discrimination, whichever is longer. The 450–day period is based on the 180 days the employee has to file an EEOC charge, plus the 180 days the EEOC has to act on the charge or issue a right to sue letter, plus the 90 days the employee has thereafter to file a lawsuit. This 450–day period reflects the time that an employee with a FedADEA claim would typically have, under Title VII and the FedADEA without time extensions, to file a judicial complaint after the discriminatory act.

Under this scheme, if an employee has a timely parallel federal claim, she would also have a timely state claim even if the federal claim took more than 450 days to get to court; this result appears to be intended in the AlaADEA's language tying the AlaADEA's statute of limitations to that of the FedADEA. But if the employee has no parallel timely federal claim, she would still have, at the least, the period of time that a hypothetical employee with a federal claim would have to investigate the facts, seek legal advice, weigh and consider the merits of the claim, and even negotiate with the employer, before triggering the time and expense of a lawsuit.

In addition, while this scheme is perhaps not perfect, it rewards an employee for filing an EEOC charge with a potentially longer period to file her state-law claim,

but does not require her to do so; it also appears to meet the AlaADEA's plain language by tying the AlaADEA's statute of limitations to the FedADEA's without requiring an employee to exhaust any administrative remedies. While this solution appears to this court to be correct, ultimately, however, this issue must be resolved by the Alabama Supreme Court. For the time being, however, the court holds that Robinson's AlaADEA claims survive Regions's statute-of-limitations defense as to Claims B, C, and D.[1] These three claims, but not Claim A, either survive the 450–day requirement or also incorporate timely parallel FedADEA claims.

### 3. § 1981

■ Regions also argues that Robinson's claims to the extent they rest on § 1981 are barred as untimely. The statute of limitations for § 1981 claims is the same as the state statute of limitations for personal injury claims in that state. *Baker v. Gulf & Western Indus., Inc.*, 850 F.2d 1480, 1482 (11th Cir.1988). In Alabama, the statute of limitations for personal injury claims is two years. 1975 Ala.Code § 6–2–38. Thus, a plaintiff making a claim under § 1981 must file her complaint within two years of the alleged discriminatory act. *Shows v. Morgan*, 40 F.Supp.2d 1345, 1362 (M.D.Ala.1999) (Thompson, J.).

■ Robinson filed this lawsuit on January 3, 2002. Given the two-year statute of limitations for claims under § 1981, any claim under § 1981 for alleged discriminatory acts that occurred before January 3, 2000, would be time barred. All four of Robinson's claims survive this barrier.

---

1. If Robinson prevails on the merits after trial on a claim in which the AlaADEA statute-of-limitations issue remains determinative, the court will, upon request, consider certifying the issue to the Alabama Supreme Court for determination pursuant to Rule 18 of the Alabama Rules of Appellate Procedure.

## B. Ripeness and Exhaustion Rules

█ Besides arguing that Robinson's claims should be barred as untimely, Regions also contends that her claims, to the extent they rest on Title VII and FedADEA claims, should be barred as unripe. Regions argues that, because Robinson filed only one EEOC charge, June 25, 2001, any alleged discriminatory acts after that date are unexhausted and not ripe for adjudication because no EEOC charge has been filed with regard these more recent acts.

█ The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation. *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985). No action alleging a violation of Title VII or the FedADEA may be brought unless the alleged discrimination has been made the subject of a timely filed EEOC charge. *Alexander v. Fulton County,* 207 F.3d 1303, 1332 (11th Cir.2000); *see also* 29 U.S.C.A. § 626(d). Not all acts complained of, however, need have been included in the EEOC charge; rather, an employee may include in her lawsuit a claim for injury resulting from any practice which "was or should have been included in a reasonable investigation of the administrative complaint." *Griffin,* 755 F.2d at 1522. Thus, an employee's lawsuit is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination. *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 929 (11th Cir. 1983).

With regard to Robinson's three Title VII and FedADEA claims that survive Regions's statute-of-limitations defense (Claims B, C, and D), only Claim B was included in Robinson's EEOC charge. Because Claims C and D were not included in her EEOC charge, the court may consider these claims only if they "should have been

included in a reasonable investigation of the administrative complaint." *Griffin,* 755 F.2d at 1522. While it is true that Claims C and D are the same as Claim B in that all three involve a failure to promote, the similarity ends there and that similarity is not enough to allow Robinson to include Claims C and D in her lawsuit. This is not a situation in which a single EEOC charge reasonably leads to an investigation of the claims of an entire class, *see, e.g., Alexander v. Fulton County,* 207 F.3d 1303, 1333 (11th Cir.2000), nor is it a situation in which an administrative notice with regard to one defendant provides notice to another, *see DiGiro v. Pall Corp.,* 993 F.Supp. 1471, 1474 (M.D.Fla.1998) (Kovachevich, J.); nor is it even a situation in which the EEOC, in investigating a minor charge of discrimination, discovers other discriminatory practices. *See, e.g., EEOC v. Huttig Sash & Door Co.,* 511 F.2d 453, 455 (5th Cir.1975).

Instead, with Claims C and D, Robinson is offering entirely new acts of discrimination, never investigated by the EEOC. While the allegations with regard to these two claims are the same as those she made in her EEOC charge—she was allegedly denied a promotion due to her race, sex, and age—she has provided no evidence and offered no argument as to why the EEOC could reasonably have been expected to investigate these two later claims based on her June 2001 EEOC charge. Not only did these later claims arise more than six months after she filed her EEOC charge, they also are, more importantly, completely discrete and distinct from the claim that is the subject of the EEOC charge, Claim B. Robinson nowhere alleges a connection, for example, between Regions's failure to promote her to Assistant Branch Manager (Claim B) and its failure to promote her to Support Center Representative (Claim D). As such, the court must conclude that a reasonable investiga-

tion of Robinson's June 2001 EEOC charge would not include allegedly discriminatory acts that occurred after she filed that charge. Robinson's original EEOC charge would also have failed to trigger Regions's investigatory and conciliatory procedures with regard to Robinson's most recent allegations. *See, e.g., Turner v. Orr*, 804 F.2d 1223, 1227 (11th Cir.1986) (interpreting scope of general EEOC charge broadly because it timely notified defendant as to plaintiff's claims). Robinson's Claims C and D entail simply "[a]llegations of new acts of discrimination, offered as the essential basis for the requested judicial review," *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir.1980);[2] as such, they "are not appropriate." *Id.* Robinson's post-EEOC charge allegations, while similar in nature to those contained in her June 2001 charge, cannot reasonably have been expected to grow out of her original charge of discrimination.

Robinson's allegations that Regions discriminated against her in the past would neither cause the EEOC to investigate possible discrimination in every instance in which Robinson applied for a promotion in the future, nor would it put Regions on notice that it should expect a charge of discrimination in every future instance in which it refused Robinson a promotion. As such, Robinson's failure to file an EEOC charge with respect to Claims C and D are fatal to these claims to the extent they rest on Title VII and the FedADEA.[3]

## C. Merits

Having found that various aspects of Robinson's four claims are untimely or unripe, the court now turns to Regions's argument that it is entitled to summary judgment on her claims on the merits. Still before the court are: (1) Claim A to the extent it rests on § 1981; (2) Claim B to the extent it rests on Title VII, § 1981, the FedADEA, and the AlaADEA; (3) Claim C to the extent it rests on § 1981 and the AlaADEA; and (4) Claim D to the extent it rests on § 1981 and the AlaADEA.

The order and allocation of proof are the same for each of Robinson's claims, be it under Title VII, § 1981, the FedADEA, or the AlaADEA. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (both Title VII and § 1981 have the same requirements of proof and the same analytical framework); *Walker v. Nations-Bank of Florida N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995) (order and allocation of proof are the same under Title VII and the FedADEA); *Bonham v. Regions Mortg., Inc.*, 129 F.Supp.2d 1315, 1326 (M.D.Ala. 2001) (Thompson, J.) (order and allocation of proof are the same under Title VII, the FedADEA, and the AlaADEA). An employee bringing a claim under Title VII, § 1981, the FedADEA, and the AlaADEA must initially establish a prima-facie case of discrimination through one of three methods: presenting direct evidence of discriminatory intent, presenting circumstantial evidence of discrimination by satis-

---

**2.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**3.** Claims C and D involve acts that occurred after Robinson filed this lawsuit, and, as of the November 25, 2002, pretrial, she had not amended her complaint to include them.

Both parties, however, have addressed these claims in their summary-judgment filings, and stated at pretrial that they would not be prejudiced by trying these claims. For reasons of judicial economy and fairness, then, the court will allow Robinson to include these claims in this lawsuit. Indeed, with the permitted filing of a supplement to the pretrial order on December 2, 2002 (Doc. no. 31), these claims are now part of this lawsuit. Fed.R.Civ.P. 16(e).

fying the four-pronged analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), or by introducing statistical evidence of discrimination. *Walker,* 53 F.3d at 1556; *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). Because Robinson has presented neither statistical evidence nor direct evidence to support her claims of discrimination, the court will address only Robinson's circumstantial evidence.

To establish a discrimination claim by circumstantial evidence using the *McDonnell Douglas* framework, the employee has the initial burden of showing by a preponderance of the evidence a prima-facie case of the proscribed practice. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir.1988). The essence of the prima-facie case is that the employee presents circumstantial evidence sufficient to generate a reasonable inference by the factfinder that the employer used prohibited criteria in making an adverse decision about the employee. If established, the prima-facie case raises a presumption that the employer is liable to the employee. *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). An employee using circumstantial evidence to make her claim of discrimination in promotion may establish a prima-facie case by showing that: (1) she is a member of a protected class; (2) she applied and qualified for a promotion; (3) she was rejected in spite of her qualifications; and (4) the position went to a person who was not a member of a protected class, *Arrington v. Cobb County,* 139 F.3d 865, 873 (11th Cir. 1998), or the employer continued to attempt to fill the position after rejecting the employee's application. *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980); *see also Walker v. Mortham,* 158 F.3d 1177, 1193 (11th Cir.1998) (employee need not establish as part of prima-facie case that successful applicant was less than or equally qualified to hold the position).

The employer may rebut the prima-facie case by producing sufficient evidence to raise a genuine issue of fact as to whether the employer took unlawful actions against the employee. *Carter,* 870 F.2d at 584. The employer can meet this burden of production by articulating a legitimate, nondiscriminatory reason for the employment decision, a reason that is clear, reasonably specific, and worthy of credence. The rebuttal burden is one of production only, and the employer does not have to persuade the court that it was actually motivated by the proffered reason. *Burdine,* 450 U.S. at 253–55, 101 S.Ct. at 1093–94.

Once the employer satisfies this burden of production, the court's focus should shift to the employee's ultimate burden of proving by a preponderance of the evidence that the employer's justification for the employment decision is a pretext for discrimination. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993). The employee may meet this burden by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also Young,* 840 F.2d at 828.

### 1. Claim A

■ Robinson claims that Regions violated § 1981 by failing to hire her for the position of Senior Loan Support Coordinator, for which she applied on January 21, 2000, and was denied on February 2, 2000.

In analyzing this claim, the court must first assess whether Robinson has established a prima-facie case of discrimination. As an African–American female, Robinson obviously falls within the class protected by § 1981; she also alleges without contra-

diction that she applied for, was qualified for, and was denied the position. While Robinson does not allege that the position went to a person who was not a member of the protected class, she does assert that Regions continued to attempt to fill the position after rejecting her application. She has established a prima-facie case.

■ However, Regions has articulated a legitimate, non-discriminatory reason for its actions to rebut that prima-facie case: that it had decided not to fill the position. Robinson admits that Regions informed her on February 2, 2000, that it was not going to fill the position, even though it had posted an open position and was taking applications for that position. Had Regions simply closed the position, and decided never to fill it, Robinson's claim might prove more troublesome. However, after telling Robinson that it was not going to fill the position, Regions once again, in May, posted a job opening for Senior Loan Support Coordinator, and Robinson once again applied for the position. Regions itself admits that it twice posted a job opening for the Senior Loan Support Coordinator position, but that it never filled that position. As such, it is clear that Regions continued to attempt to fill the position of Senior Loan Support Coordinator despite having received an application from a qualified candidate. Taking the evidence in a light most favorable to Robinson, Regions's contention that the bank, not once, but twice, simply decided not to fill the position leaves open the possibility that Regions decided to leave the position of Senior Loan Support Coordinator unfilled rather than hire a qualified African-American (Robinson) for that position. As such, Robinson's Claim A survives under § 1981.

## 2. Claim B

■ Robinson next claims that Regions violated Title VII, § 1981, the FedADEA, and the AlaADEA by failing to hire her for the position of Assistant Branch Manger, for which she applied on March 14, 2001, and was denied on April 11 of that year.

Again, the court must first assess whether Robinson has established a prima-facie case of discrimination as to this claim. As a 49–year–old African–American female, Robinson obviously falls within the classes to be protected by these statutes; additionally, she alleges without contradiction that she applied for and was denied the position, and that the position instead went to a younger white male. Finally, while Robinson admits that she did not possess the qualifications listed on the job posting—specifically, she did not have the required one year of experience in supervising tellers and customer service representatives—she does allege, without dispute, that the person eventually hired for the job of Assistant Branch Manager— Whitaker Hamilton—also lacked that experience. Thus, looking at the evidence in a light most favorable to Robinson, she was qualified for the position of Assistant Branch Manager because she possessed the same qualifications as the person eventually hired for the job. As such, the court finds that Robinson has satisfied the prima-facie case of discrimination in this case by showing that an applicant with similar qualifications was given the position. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1300–01 (11th Cir.1999) (Tjoflat, J.) (main opinion with no majority) (stating that discrimination is possible despite the fact that a person is not qualified for the relevant position).

■ Because Robinson has made out a prima-facie presumption of discrimination, the court's next step is to determine whether Regions has effectively rebutted that presumption by producing sufficient evidence to raise a genuine issue of fact as to whether Regions took unlawful actions

against Robinson. Regions's stated reason for not hiring Robinson for this position is that she was unqualified. While this reason is questionable in light of the fact that Hamilton was similarly unqualified, it meets Regions's "exceedingly light" burden under this prong. Regions simply must produce a legitimate, nondiscriminatory reason for its employment decision, rather than having to persuade the court that it was actually motivated by that decision. It has produced such a legitimate reason.

 Having completed the first two steps, the third step in the court's analysis is to evaluate whether Robinson has met her ultimate burden of proving by a preponderance of the evidence that Regions's justification for not hiring her is a pretext for discrimination. While she never explicitly makes it, implicit in Robinson's claim is the argument that she was more qualified than Hamilton. As such, the argument continues, Regions was motivated by discriminatory reasons for failing to promote Robinson to the position of Assistant Branch Manager. In order to survive summary judgment on this claim, Robinson must provide evidence that could allow the court to find that, not only was she more qualified than Hamilton, but that she was so "substantially more qualified than the person promoted" that the disparities in qualifications between the two individuals "jump off the page and slap [you] in the face." *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir.2000) (citation omitted).

In this case, not only has Robinson failed to show that she is substantially more qualified than Hamilton, she has failed even to argue that she is more qualified than him. Without discussing her own qualifications and Hamilton's, Robinson simply points out that Hamilton had the same lack of supervisory experience that she did. The court's own analysis of

Robinson and Hamilton's respective qualifications, however, shows that Robinson cannot meet her burden of showing that she is substantially more qualified than Hamilton.

There is little evidence in the record as to Robinson's job qualifications. What little there is, however, shows that at the time she applied for the position of Assistant Branch Manager, Robinson had worked at Regions for a little over four years. She was originally hired as an Accounting Clerk I, and put on a six-month probationary period. After that period, she was given another 30 days of probation because her work needed improvement. After a year, Robinson received a favorable annual performance evaluation and was promoted to Accounting Clerk II. Just five months after that promotion, in April 1998, Robinson was again promoted, this time to Information System Coordinator I. Robinson apparently struggled in that new position and, after about six months, she was given a low performance rating and moved to Computer Operations Associate. In March 1999, after approximately four months in that new position, Robinson was given an improved performance-review score and a resulting 4% raise. Robinson has apparently held that position since March 1999. The record is silent as to both Robinson's pre-Regions employment and her educational history, save the fact that she has a bachelor's degree.

Similarly, there is also little evidence in the record as to Hamilton's job qualifications. What little there is, however, shows that at the time he applied for the position of Assistant Branch Manager, Hamilton had worked within Regions for a little over three years, first as a Call Center Representative II, then as a Credit Administrator, and finally as a Branch Utility, a position he had held for about five months.

Prior to his employment at Regions, Hamilton had worked as a realtor. His educational background includes four years at Auburn University, where he graduated with a major in psychology and a minor in economics. His last performance rating at Regions, on December 7, 2000, found him to exceed the requirements of his job (a score of four out of five); his prior rating, on November 29, 1999, found him to need improvement (a score of two out of five).

Given a comparison of Robinson's job qualifications with Hamilton's, it is unclear who was more qualified for the position of Assistant Branch Manager at the time each applied for that position. Each had a bachelor's degree, each had substantial experience at Regions, and each failed to have the supervisory experience necessary for the assistant manager position. Hamilton had at one point been given a low performance rating; Robinson had at one point been given 30 extra days of probation due to a need for improved performance, and had been demoted from a position due to a low performance rating. Taken in a light most favorable to Robinson, there is clearly a question of fact as to which individual was more qualified; there is no question, however, that Robinson has not provided evidence to show that she was so "substantially more qualified" than Hamilton that the disparities in qualifications between the two "jump off the page and slap [you] in the face." *Lee,* 226 F.3d at 1254. As such, Robinson's claim that Region's failure to promote her to Assistant Bank Manager constituted illegal discrimination cannot survive summary judgment.

### 3. Claim C

 Robinson also claims that Regions violated the AlaADEA and § 1981 by failing to hire her for the position of Corporate E–Mail Coordinator, for which she applied on February 28, 2002, and was denied on April 24 of that year.

Robinson has not made out a prima-facie case of discrimination with regard to this claim. While she is a member of the classes to be protected by the AlaADEA and § 1981, and has applied for and was denied a position that went to a younger white male, Robinson, however, has not shown that she met the minimum qualifications required for the job. Robinson states that she does, but provides no evidence to support her claim; in fact, she simply says that she had six months in her present position with Regions and the degree required for the position, while ignoring the job's other minimum qualifications. Regions, on the other hand, alleges that Robinson was not selected for the position because she lacked the technical skills (including working knowledge of e-mail systems, networking, PC operating systems, and one-to-three years' experience in a related field) required for the position as described in the job posting.

 Regions has informed the court of the basis for its summary judgment, so, as discussed above, the burden shifts to Robinson to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e). In this case, Robinson has not provided any specific facts proving that she had the working knowledge of e-mail systems, networking, PC operating systems, and the one-to-three years' experience in a related field necessary for the Corporate E–Mail Coordinator position that Regions claims she did not possess; she simply asserts, without elaboration,

that she was qualified for the position. This type of "conclusory assertion[ ] . . . in the absence of supporting evidence, [is] insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997). Claim C cannot survive summary judgment.

### 4. Claim D

Robinson's final claim is that Regions violated the AlaADEA and § 1981 by failing to hire her for the position of Support Center Representative I, for which she applied on March 21, 2002, and was denied on May 13 of that year.

Robinson has made out a prima-facie case of discrimination for this claim. Again, she is a member of the classes to be protected by the AlaADEA and § 1981, and has applied for and was denied a position that went to a younger white male, Adam Davies. As to this promotion denial, Robinson alleges, without contradiction, that she met the minimum qualifications required for the job, which included a bachelor's degree and six months in one's present position with Regions.

 Because Robinson made out her prima-facie case of discrimination, the burden shifts to Regions to rebut the presumption of discrimination by producing sufficient evidence to raise a genuine issue of fact as to whether Regions took unlawful actions against Robinson. Regions's stated reason for its decision to hire Davies instead of Robinson is that Robinson lacked the knowledge of and experience with the relevant computer systems that Davies had; that Davies was a computer support representative in his current job at the time he applied to Regions; and that Davies was the most qualified candidate for the position. This reason satisfies Regions's burden of production for rebutting Robinson's prima-facie case.

The court's focus now shifts to Robinson's ultimate burden of proving by a pre-

ponderance of the evidence that Regions's justification for hiring Davies instead of her is a pretext for discrimination. Robinson argues that Regions's justification is pretextual because Davies did not meet the minimum qualifications for the Support Center Representative I job: namely, he did not have a minimum of one year in his most recent position. Rather, at the time of his application, Davies had only been in his current position for a little over three months. Regions, however, argues that the minimum qualifications on its internal job posting are different from those for external applicants. Specifically, Regions points out that the minimum qualification for the Support Center Representative I position was a "minimum of 1 year in present position with [Regions]." Because Davies was an external applicant, he clearly could not meet this requirement.

 Robinson's argument raises an issue of fact as to whether Regions discriminated against her by denying her the Support Center Representative I position. While Regions may, indeed, have different standards for internal and external applicants, the record is void of anything to support that it, in fact, did have different qualifications for internal and external applicants. For example, there is no evidence, for example, of a history or routine or separate qualifications and separate postings for the two groups. In the face of affirmative evidence that Robinson met, but Davies did not, the qualifications that were posted, there is an issue of fact as to whether Regions's justification for hiring Davies (and for holding him to a different qualification than internal employees) is simply a pretext for discrimination. As such, Robinson's Claim D will survive summary judgment to the extent it is based on § 1981 and the AlaADEA.

## IV. CONCLUSION

For the reasons stated above, with regard to defendant Regions Financial Corporations's motion for summary judgment, filed June 27, 2002 (Doc. no. 16), it is ORDERED that:

(1) The motion is denied as to the following claims: Claim A to the extent it is based on § 1981 and Claim D to the extent that it is based on § 1981 and the AlaADEA. This lawsuit will proceed to trial on these claims.

(2) The motion is granted in all other respects.