Jerry Leon DEES, Jr., Plaintiff,

v.

**HYUNDAI MOTOR MANUFACTUR-ING ALABAMA, LLC, and Hyundai Motor America, Inc., Defendants.**

Civil Action No. 2:07cv306–MHT.

United States District Court,
M.D. Alabama,
Northern Division.

March 25, 2009.

David Allen McDonald, Jeffrey Rayborn Sport, Vincent F. Kilborn, III, W. Perry Hall, Kilborn Roebuck & McDonald, Mobile, AL, for Plaintiff.

Joseph Trent Scofield, Thomas Scott Kelly, Timothy A. Palmer, Ogletree, Deakins, Nash, Smoak & Stewart, Birmingham, AL, Matthew Kinard Johnson, Ogletree Deakins Nash Smoak & Stewart, PC, Greenville, SC, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, plaintiff Jerry Leon Dees, Jr., asserts the following claims against defendants Hyundai Motor Manufacturing Alabama, LLC (HMMA) and Hyundai Motor America, Inc. (HMA): termination and harassment claims under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USER-RA), 38 U.S.C. §§ 4301–4334, and outrage and conversion claims under Alabama law. Jurisdiction over the USERRA claims is proper under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3), and the state-law claims may be heard under supplemental jurisdiction, 28 U.S.C. § 1367(a).

On May 21, 2008, this court entered summary judgment against Dees on his USERRA-termination claim and state-law outrage claim against HMMA and on all claims against HMA, with the result that Dees's USERRA-harassment claim and state-law conversion claim against HMMA were to go to trial. *Dees v. Hyundai Motor Mfg. Alabama, LLC*, 2008 WL 2157009 (M.D.Ala.2008) (Thompson, J.). This case is again before the court, this time on Dees's and HMMA's motions asking the court to reconsider its summary-judgment decision. For the following reasons, the court will grant the reconsideration motions, vacate its entire May 21 summary-judgment opinion and accompanying judgment, and enter this new opinion, with a companion judgment, in their place.[1]

---

1. A district court "ha[s] the power to vacate the summary judgment because a final judgment had not been entered in the case." *In re Saffady,* 524 F.3d 799 (6th Cir.2008) (quoting *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir.1991)); *see also Marconi Wireless v. United States,* 320 U.S. 1, 47, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943) (stating that the court has the "power at any time prior to entry of its final judgment ... to reconsider any por-

The court now holds that HMMA and HMA are entitled to summary judgment on both of Dees's USERRA claims (retaliation and harassment) and that both of Dees's state-law claims (outrage and conversion) should be dismissed with the right to refile them in state court.

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. FACTS

Dees began working at HMMA as a maintenance technician in the Stamping Maintenance Department in November 2005. At that time, he was also a Staff Sergeant and Combat MP in the Alabama Army National Guard and had previously served two tours in Iraq.

Dees's direct supervisors at HMMA were Stamping Maintenance Assistant Manager Greg Prater and Team Leader Kevin Hughes. Prater and Hughes began to harass Dees almost immediately upon learning about his military service. Prater required that Dees provide nonexistent military orders for Guard monthly weekend training; forbade Dees from missing work for training; made derogatory comments about the Guard in the presence of Dees and other employees; and attempted to coerce Dees's coworkers to state, false-

ly, that Dees had violated company policies and procedures. Additionally, Prater and Hughes assigned Dees to difficult and dangerous work more frequently than they did for other employees. In an effort to stem the harassment, Dees asked the sergeant of his Guard unit to send a letter to HMMA's Human Resources Department that explained the lack of monthly military orders. The sergeant did so and also offered to confirm Dees's presence at the weekend trainings. Instead of quelling the harassment, however, the sergeant's letter caused the harassment to escalate.

In February 2007, Production Stamping Manager Jim Brookshire accused Dees of sleeping on the job, and a HMMA committee terminated Dees's employment. After his termination, Dees recovered most of his personal items from his locker but did not recover military pay stubs and notes that he had made about his harassment.

## III. DISCUSSION

### A. USERRA Claims

As stated, Dees has two USERRA claims: a termination claim and a harassment claim. USERRA provides that a member of the Armed Services "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a).

#### 1. "Employer" within the meaning of USERRA

■ Before turning to the substance of Dees's two USERRA claims, it is necessary to determine whether both HMMA and HMA may properly be sued as Dees's "employer" or, as the defendants argue, only HMMA may be deemed Dees's employer.

tion of its decision and reopen any part of the      case").

HMMA manufactures Hyundai automobiles, while HMA distributes, markets, and sells Hyundai automobiles in the United States. The parent company of both is Hyundai Motor Company, Ltd. (HMC), which is traded on the Korean Stock Exchange. Defs.' Corporate/Conflict Disclosure Statement (Doc. No. 14).

In USERRA, "employer" means "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. § 4303(4)(A)(i). This definition suggests that the statute is concerned only with the "person, institution, organization, or other entity" that carries out "employment-related responsibilities," and not with who controls the overall enterprise.

The entity carrying out employment-related responsibilities was HMMA alone. The totality of the circumstances demonstrate that HMMA is a start-up that HMC (not HMA) is assisting in getting off the ground. See Second Warner Decl. (Doc. No. 58), at 2. In particular, HMMA has a number of Korean expatriates "on loan" from HMC (including its President, Chief Operating Officer, and Chief Financial Officer) but these persons are employed by HMC, not HMA, and were also not on the HMMA payroll. Warner Depo. (Doc. No. 69), at 12. No HMA employees work in Alabama, id. at 27, and all members of the committee overseeing Dees's termination were HMMA employees. Defs.' Br. (Doc. No. 69), at 20. All personnel decisions, including hiring, training, and firing, were undertaken by HMMA's Human Resources Department, with no involvement by HMA. Warner Depo. (Doc. No. 69), at 24, 35; Parker Decl. (Doc. No. 69), at 2. The companies are undeniably linked, but

their relationship does not indicate that HMA handled any of HMMA's employment-related duties such that HMA could be found liable under USERRA.

HMA is therefore entitled to summary judgment on both of Dees's USERRA claims. However, even if HMA could be liable to Dees for a USERRA violation, Dees could still not recover from it because, as explained next, he cannot recover on his USERRA claims for other reasons.

### 2. USERRA-termination claim

Dees claims HMMA and HMA terminated his employment because of his Guard membership. As this court explained in an earlier opinion on a discovery dispute between Dees and the defendants, Congress enacted USERRA to encourage "noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civil careers and employment which can result from such service" and to minimize "the disruption to the lives of persons performing service in the uniformed services as well as to their employers." *Dees v. Hyundai Motor Mfg. Ala., LLC,* 524 F.Supp.2d 1348, 1351 (M.D.Ala. 2007) (Thompson, J.) (quoting 38 U.S.C. § 4301(a)). In the legislative history of a predecessor statute to USERRA, it was observed that, "[i]f these young men are essential to our national defense, then certainly our Government and employers have a moral obligation to see that their economic well being is disrupted to the minimum extent possible." H.R.Rep. No. 1303, 89th Cong. (1966), U.S.Code Cong. & Admin.News 1966, p. 2370 (quoted in *Monroe v. Standard Oil Co.,* 452 U.S. 549, 561, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981)).

■ USERRA prohibits discrimination in employment if the employee's membership in the armed services "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such

membership." 38 U.S.C. § 4311(c)(1). To proceed under USERRA, Dees must show by a preponderance of the evidence that his protected status was a motivating factor in terminating him, although that status need not be the sole cause as long as "it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir.2005) (citation omitted).

■ Dees has presented evidence that Prater, his direct supervisor, may have harbored some animus as a result of Dees's membership in the Guard. *See, e.g.,* Archer Decl. (Doc. No. 108), at ¶ 3 ("Based on my personal observations, Prater wanted to get rid of Leon because of the ongoing dispute over Leon's Guard obligations."); Bomberg Decl. (Doc. No. 108), at ¶ 5 ("It looked like Leon had a target on his back because of his Guard obligations."). Nevertheless, Dees has not shown that his protected status was a motivating factor in terminating him. Prater's actions, taken by themselves, could constitute circumstantial evidence from which Prater's discriminatory motivation could be inferred, *see Coffman*, 411 F.3d at 1238, but Prater's discrimination cannot be imputed to HMMA and HMA, for Prater played no role in Dees's termination. Discriminatory remark by non-decisionmaker is insufficient to satisfy a plaintiff's burden under USERRA to show employer's discriminatory motive. *See Velazquez–Garcia v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d 11, 18 (1st Cir.2007) (in USERRA case, "the remarks that [the plaintiff] testified to were not made by those who participated in the decision to fire him, and this does limit their probativeness"); *cf. Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir.1997) (in case under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e–17, discriminatory remark by non-decisionmaker is insufficient to satisfy

plaintiff's burden to show discriminatory employment motive by employer).

Dees emphasizes that another supervisor, John Applegate, also harassed him on the basis of his Guard membership; recommended his termination; and attended the meeting of the termination committee. Again, Dees has presented no evidence that his protected status actually played a part in the decision to terminate him. Dees was found sleeping by Stamping Production Manager Jim Brookshire, and HMMA considers "intentional sleeping" to be serious conduct meriting termination. 2d Warner Decl. (Doc. No. 68) at ¶ 15; Employee Handbook (Doc. No. 68), at 34. Dees's sleeping was deemed "intentional," rather than accidental, because he was found in an isolated area and was thought to have set up the area to avoid detection. Importantly, it was Brookshire who reported Dees, and the termination decision was ultimately made by a committee. There is no evidence that either Brookshire or the committee harbored any bias against those in the military. Moreover, the termination proceeding was based solely on the allegations that Dees was asleep on the job. 2d Warner Decl. (Doc. No. 69), at ¶ 14; Clevenger Decl. (Doc. No. 69), at ¶ 11.

However, even if, as Dees contends, the allegations against him were fabricated, there is no evidence whatsoever that the termination committee was not acting in good faith when it terminated him on the basis of those allegations. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (regardless of truth of allegations against the plaintiff, the inquiry is limited to whether the decisionmakers believed the allegations when they discharged him). And, even if Dees could show that his military status was a motivating factor in his termination, the committee would have made the same decision

without regard to Dees's military service, as intentional sleeping is an infraction that merits termination. *See* Ontario King Investigation File (Doc. No. 108).

HMMA and HMA are entitled to summary judgment on Dees's USERRA-termination claim.

### 3. USERRA-harassment claim

Dees alleges that HMMA and HMA violated USERRA by "creating an environment of harassment." Compl. (Doc. No. 2), at ¶¶ 20–21.

#### a. Abandonment of USERRA-harassment claim

Dees, in his opposition to summary judgment, repeatedly referred to HMMA's "harassment," Pl.'s Br. (Doc. No. 107), at 2–3, 5–6, 10, 12, 17–21, but did not specifically address HMMA and HMA's legal argument that a harassment claim is non-cognizable under USERRA or show that his allegations are legally sufficient for a harassment claim. HMMA and HMA now argue that this non-responsiveness shows that Dees has abandoned his USERRA-harassment claim. Defs.' Reply Br. (Doc. No. 115), at 8–9. The court disagrees.

■■ HMMA and HMA correctly note that, in "opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him.... [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). There appears to be no question that a complete omission of the claim in response to summary judgment is sufficient for a finding of abandonment. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir.2001) (claim that was included in complaint but not again raised until the plaintiff's supplemental reply brief is abandoned); *Robinson v. Regions Financial Corp.*, 242 F.Supp.2d 1070, 1075 (M.D.Ala.2003)

(Thompson, J.) (where plaintiff's opposition to summary judgment addresses discrimination with respect to only four positions, claims with regard to the other 25 positions in the defendant's brief are deemed abandoned). In the instant case, however, the omission is not total: Dees refers to the facts of his USERRA-harassment claim without refuting HMMA and HMA's legal arguments.

The frequency with which Dees mentions harassment in his brief strongly suggests that he did not intend to abandon the harassment claim and, indeed, underscores the claim's centrality to his lawsuit. Moreover, it would be an unduly harsh punishment to deem the claim abandoned based on Dees's failure to make legal arguments despite his consistent reiteration of his harassment claim. While Dees failed to argue the question fully, he did in fact raise it in response to summary judgment. *Cf. Road Sprinkler Fitters Local Union N. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994) (court may dismiss as abandoned a claim "alleged in the complaint but not even raised as a ground for summary judgment").

#### b. Whether USERRA provides cause of action for harassment

USERRA provides that a uniformed servicemember may not be denied "any benefit of employment." 38 U.S.C. § 4311(a). The courts have not yet resolved whether freedom from harassment properly constitutes a "benefit of employment" under the statute. The Eleventh Circuit Court of Appeals has not weighed in on the question; indeed, only a smattering of courts nationwide has done so. Some courts considering the issue have assumed arguendo that a cause of action for harassment exists but determined that the plaintiff's claimed harassment was insufficiently severe and pervasive. *Miller v. City of Indianapolis*, 281 F.3d 648, 653 (7th Cir.

2002); *Figueroa Reyes v. Hosp. San Pablo del Este*, 389 F.Supp.2d 205, 213 (D.P.R. 2005) (Fuste, J.). Others have based their decisions on the existence of an anti-harassment employment policy, *Vickers v. City of Memphis*, 368 F.Supp.2d 842, 845 (W.D.Tenn.2005) (McCalla, J.), or the content of a consent decree, *Church v. City of Reno*, 168 F.3d 498 (9th Cir.1999) (table), without reaching the question of whether the statute itself supports a harassment claim.[2]

One case to address the question squarely is *Petersen v. Department of Interior*, 71 M.S.P.R. 227 (1996). In *Petersen*, the plaintiff contended that he had been harassed as a result of his prior military service. *Petersen* examined the legislative history of the term "benefit of employment" and found that Congress intended the phrase to be interpreted expansively in order to support veterans, *id.* at 236, and also noted that the Supreme Court has broadly construed predecessor statutes. *Id.* at n. 8 (citing *Coffy v. Rep. Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) ("The statute is to be liberally construed for the benefit of the returning veteran.")). *Petersen* then stated that, "Although the appellant's hostile environment claim does not clearly fall within the term 'benefit,' we are persuaded that an 'expansive interpretation' of that term, as intended by Congress, leads to

the conclusion that it does." *Id.* at 237. *Petersen*'s conclusion was bolstered by courts' consistent holdings that other anti-discrimination statutes lacking anti-harassment language (including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112) nevertheless proscribe harassment as a kind of discrimination. *Id.* at 238–39. The Eleventh Circuit Court of Appeals has also acknowledged the prohibition on harassment into other anti-discrimination statutes. *See., e.g., Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367 (11th Cir.2000) (school district may be liable under Title IX for teacher's sexual harassment of a student).

■ The court agrees with *Petersen*'s logic and, in the absence of Eleventh Circuit precedent to the contrary, concludes that a claim for harassment on account of military service is cognizable under US-ERRA.[3] Notably, harassment is cognizable under other anti-discrimination statutes, and USERRA is intended to be construed broadly for the benefit of returning veterans. This conclusion is consistent with the purpose of USERRA—namely, to encourage individuals to join the military by assuring them that their jobs are not at risk. 38 U.S.C. § 4301(a)(1). An assurance that employ-

---

**2.** As will be discussed below, the court in *Vickers* found a cause of action for harassment under USERRA, but it also held that a plaintiff can succeed on a USERRA harassment claim only if he can show an employment policy prohibiting the conduct about which he is complaining. 368 F.Supp.2d at 845.

**3.** At least three other courts have been similarly persuaded by *Petersen*. *See Maher v. City of Chicago*, 406 F.Supp.2d 1006, 1023 (N.D.Ill.2006) (Cole, M.J.) ("Harassment on account of prior military service can be a violation of USERRA."); *Steenken v. Campbell*

*County*, 2007 WL 837173, at *3 (E.D.Ky.2007) (Bunning, J.) ("Because the right to be free from a hostile work environment, broadly construed, is a benefit of employment, the Court ... concludes that Plaintiff's hostile work environment claim is cognizable under USERRA."). Another case, *Vickers v. City of Memphis*, also adopted *Petersen*'s conclusion that "USERRA provides a cause of action for harassment due to prior military service" but also held that a plaintiff may succeed only if an employer's policy prohibits the conduct about which he complains. 368 F.Supp.2d at 844.

ees cannot be fired on account of their military service is meaningless without assurance that the work environment will not be so intolerable that they will feel forced to quit. This protection is especially necessary at a time when demand for deployment of non-career servicemembers in the National Guard and Reserves has reached an unprecedented level; such persons now account for nearly 50% of the active military. Konrad S. Lee, *"When Johnny Comes Home Again" Will He Be Welcome at Work?*, 35 Pepp. L.Rev. 247, 248 (2008).

### c. Dees's harassment claim

■ Having found that a harassment claim is cognizable under USERRA, the court now turns to the viability of Dees's harassment claim. USERRA-harassment claims, like those under Title VII, should be analyzed using the principle announced by the Supreme Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986): harassment is actionable when it is "sufficiently severe or pervasive to alter conditions of [the victim's] employment and create an abusive working environment." *See Petersen*, 71 M.S.P.R. at 239 (harassment violates USERRA if it is "sufficiently pervasive to alter the conditions of employment and create an abusive working environment"); *Maher*, 406 F.Supp.2d at 1023 (same); *see also Baldwin v. Blue Cross Blue Shield of Ala.*, 480 F.3d 1287, 1301 (11th Cir.2007) (applying *Meritor* standard in Title VII case). Among the factors to be considered in assessing a harassment claim are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

■ Viewing the evidence in the light most favorable to Dees, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the court finds that Dees has shown the existence of genuine issues of material fact as to the hostility of his work environment that are sufficient to preclude summary judgment. Prater, Dees's supervisor, made frequent derogatory comments about Dees's Guard service and engaged in discriminatory behavior that went beyond mere words. By demanding that Dees produce orders for every Guard training weekend and insisting that he put his civilian job ahead of his military service, Prater was implicitly threatening Dees's continued employment at HMMA. This behavior occurred with some frequency, not merely on a few isolated incidents. Furthermore, Prater unfairly over-assigned Dees to more dangerous work, suggesting that he punitively assigned Dees to work that is more physically threatening. These allegations meet the standard for "severe or pervasive harassment," under both the subjective and the objective components. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir.1999) (en banc). Dees subjectively perceived the harassment to be severe and pervasive, and a reasonable person in his position would agree. *Id.* Dees reports frequent derogatory remarks and over-assignment to physically threatening tasks, and Prater gave him reason to fear for his job. In light of the totality of the circumstances, the court finds that a reasonable jury could find that the harassment Dees faced was sufficiently severe and pervasive to alter the terms and conditions of his employment.

■ Furthermore, HMMA may be held liable for the harassment, as Prater was

Dees's supervisor and HMMA has raised no affirmative defense that it exercised reasonable care to correct the harassment and that Dees failed to avoid the harm. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

■ Nevertheless, HMMA and HMA are entitled to summary judgment on Dees's USERRA-harassment claim. US-ERRA provides that a court may award three kinds of relief: it may require the employer to "(A) ... comply with the provisions of this chapter," 38 U.S.C. § 4323(d)(1), "(B) ... compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter," *id.,* and "(C) ... require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful." *Id.* The statute further provides that, "The court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). This remedial scheme conspicuously omits any recovery for mental anguish, pain and suffering, and punitive damages. *See Vander Wal v. Sykes Enterprises, Inc.,* 377 F.Supp.2d 738, 746 (D.N.D.2005) (Hovland, J.).

Because Dees suffered no loss of wages or other benefits as a result of the alleged harassment against him, he would not be entitled to loss of wages or other benefits or any commensurate liquidated damages were he to prevail on his harassment claim. And because he is no longer working for HMMA, an injunction requiring HMMA and MHA "to comply with the

provisions of [USERRA]," 38 U.S.C. § 4323(d)(1)(A), would be of no benefit to him. In short, there is no relief the court can give Dees for the harassment he may have suffered.

■ As a result, Dees does not meet the minimum constitutional requirements for standing as to his harassment claim. In order to have standing (1) "the plaintiff must have suffered ... an invasion of a legally protected interest resulting in a "concrete and particularized" injury," (2) "the injury must have been caused by the defendant's complained-of actions," and (3) "the plaintiff's injury or threat of injury must likely be redressible by a favorable court decision." *Fla. State Conference of N.A.A.C.P. v. Browning,* 522 F.3d 1153, 1159 (11th Cir.2008) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Dees cannot meet this third requirement because a decision in his favor would not bring him any relief. *Cf. Tanner Advertising Group, L.L.C. v. Fayette County,* 451 F.3d 777, 786 (11th Cir.2006) ("A request for damages that is barred as a matter of law cannot save a case from mootness.").

The court emphasizes that it is not saying that there is no remedy for USERRA-prohibited harassment. If Dees were still working for HMMA and if the fact-finder were to find that Dees had suffered harassment as claimed, there would be the question of whether an injunction prohibiting HMMA and MHA from harassing him would be appropriate. *See* 38 U.S.C. § 4323(d)(1)(A) ("The court may require the employer to comply with the provisions of this chapter."). But, because Dees is no longer working for HMMA, the court need not reach this issue.

### B. State–Law Claims

■ Having determined that summary judgment should be granted in favor of HMMA and HMA on Dees's termination

and harassment claims under USERRA, the court now considers what to do with Dees's state-law claim for outrage and his state-law claim for conversion of his notes and military pay stubs. Because summary judgment is being granted on Dees's federal claims, this court "may decline to exercise supplemental jurisdiction" over his state-law claims. 28 U.S.C. § 1367(c)(3). The language of the statute is discretionary, but case law leans toward dismissing state-law claims in the absence of a federal claim to tether them to federal court. *See Mergens v. Dreyfoos,* 166 F.3d 1114, 1119 (11th Cir.1999) ("This court has noted that if the federal claims are dismissed prior to trial, [precedent] strongly encourages or even requires dismissal of state claims.") (internal quotation omitted); *see also Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"). The court thus declines to exercise supplemental jurisdiction over Dees's state-law outrage and conversion claims. *See City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Engelhardt v. Paul Revere Life Ins. Co.,* 139 F.3d 1346, 1350 (11th Cir.1998).[4]

\* \* \*

In conclusion, the court will, as stated, grant the reconsideration motions, vacate its previous summary-judgment opinion and accompanying judgment, and enter this new opinion, with a companion judgment, in their place. Pursuant to this new opinion, the court will enter summary judgment in favor of HMMA and HMA on both of Dees's USERRA claims (retaliation and harassment) and will dismiss both

of his state-law claims (outrage and conversion) with the right to refile them in state court. An appropriate judgment will be entered.

---

**4.** Pursuant to 28 U.S.C. § 1367(d), the applicable statute of limitations under state law will be tolled 30 days so as to allow Dees time to refile his state-law claims in state court.