[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-16363
Non-Argument Calendar

_____

D.C. Docket No. 6:12-cv-00078-BAE-JEG

JESSE L. LOSEY,

Plaintiff - Appellant,

versus

WARDEN,
TIFFANY NAIL,
LINDA BASS,
GWENDOLYN BROWN,
Correctional Officers,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 4, 2013)

Before BARKETT, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Jesse Losey appeals district court orders granting the motion to dismiss of Warden Dannie Thompson and the motion for judgment on the pleadings of Correctional Officers Tiffany Nail, Linda Bass, and Gwendolyn Brown ("Correctional Officers"). Mr. Losey brought suit against the Warden Thompson and the Correctional Officers under the Eighth Amendment and 42 U.S.C. §1983 after he was raped by a fellow inmate at Smith State Prison in Glennville, Georgia. Mr. Losey's suit alleges that Warden Thompson and the Correctional Officers were deliberately indifferent to the health and safety of the inmates in their protection, which he claims was the direct and proximate cause of his rape. Adopting the recommendations of the magistrate judge, the district court dismissed Mr. Losey's suit because his pleadings did not establish that any of the defendants had knowledge of a substantial risk to Mr. Losey. Upon review, we affirm the district court's order as it relates to Warden Thompson and Correctional Officers Bass and Brown. However, we reverse and remand with regards to the district court's order as it relates to Officer Nail.

## I.    Background

On July 8, 2010, Mr. Losey, who is serving a sentence for attempted murder, was raped by Reggie Whitehead, a fellow inmate at Smith State Prison. Before Mr. Losey's housing unit was locked down for the evening, Mr. Losey went to the cell of a Mr. Whitehead to use his contraband cell phone. But Mr. Whitehead would

not allow Mr. Losey to leave his cell and Mr. Losey was subsequently locked in Mr. Whitehead's cell for the night, whereafter Mr. Whitehead raped him. Mr. Losey was unable to escape until the next afternoon.

Mr. Losey's complaint alleges that Warden Thompson and the Correctional Officers were deliberately indifferent to his health and safety. Mr. Losey claims that Warden Thompson was aware of the fact that Mr. Losey was improperly classified and assigned to Smith State Prison alongside far more dangerous inmates yet failed to exercise his discretionary authority to transfer Mr. Losey, exposing Mr. Losey to the risk of being raped. Mr. Losey alleges that the Correctional Officers failed to make mandated inmate counts on the night he was raped and falsified records that indicated that they actually conducted such counts, thereby failing to discover that he was being held against his will in another inmate's cell. Mr. Losey also claims that Officer Nail did a security check and either failed to look into the cell in which he was being held or looked into the cell and refused to intervene.

## II.    Standard of Review

We review a district court's grant of a motion for judgment on the pleadings and a motion to dismiss for failure to state a claim *de novo*. *Ortega v. Christian,* 85 F.3d 1521, 1524-25 (11th Cir. 1996) (motion for judgment on the pleadings); *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004) (motion

to dismiss). A motion to dismiss and a motion for judgment on the pleadings should not be granted unless "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002)(motion for judgment on the pleadings standard)(quotations omitted); *Bragg*, 374 F.3d at 1065 (motion to dismiss standard). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

## III.    Discussion

To make a failure to protect claim under the Eighth Amendment, Mr. Losey must plead facts that establish "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Deliberate indifference means that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Mr. Losey's complaint fails to state a claim against Warden Thompson because it does not sufficiently allege that Warden Thompson had any knowledge of a risk to Mr. Losey's safety. Even assuming *arguendo* that Mr. Losey was

4

misclassified and that his misclassification put him at substantial risk of serious harm, his complaint, if true, does not establish that Warden Thompson was deliberately indifferent to that risk of harm. That is because Mr. Losey's allegations that Warden Thompson had subjective knowledge that he was misclassified are entirely conclusory and are therefore not afforded the presumption of truth absent some factual support that make them plausible. *Iqbal*, 556 U.S. at 679 (2009). Here, Mr. Losey claims that Warden Thompson would have known that he was misclassified "based on input from staff, review of inmate records, and oversight of the classification process." Such a statement based on the general nature of Warden Thompson's job does not make it plausible that Warden Thompson had actual knowledge that Mr. Losey was misclassified, as required to survive a motion to dismiss on a deliberate indifference standard. *Id.* Nor does Mr. Losey's complaint allege that Warden Thompson was aware of widespread classification errors within his prison that would have put him on notice of a substantial risk of serious harm to the inmates he supervised. Therefore, the complaint does not sufficiently plead that Warden Thompson was deliberately indifferent to the alleged risk that Mr. Losey faced from being incarcerated with more dangerous convicts.

Mr. Losey has also failed to state a claim against Officers Bass and Brown. Mr. Losey's complaint alleges that Officer Bass failed to conduct an official count,

5

as required by internal prison policy and in which officers to go cell-to-cell with each inmate standing by his bunk to determine that all inmates are accounted for. Mr. Losey also claims that Officer Brown falsely documented that an official count had been taken. However, even if these allegations are true, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000). It would be a different situation if the policy that the Correctional Officers failed to follow put them on notice that their actions would create a substantial risk of serious harm to inmates, but Mr. Losey makes no such allegation.  As a result, he has failed to state a claim against Officers Bass and Brown.

On the other hand, we do think that Mr. Losey has stated a claim against Officer Nail. Mr. Losey's complaint alleges that Officer Nail conducted an unofficial count on the night he was raped, walking directly past the cell in which he was being held. According to the complaint, at the time that Officer Nail was conducting the count, Mr. Whitehead was holding down Mr. Losey and covering his mouth, which Officer Nail would have seen had she looked into the cell. Mr. Losey also alleges that unofficial counts typically involve officers walking cell-to-cell and looking into the window of each cell to check on the status and whereabouts of each inmate. Finally, Mr. Losey claims that Officer Nail "either

6

looked into the cell and did not care what she saw, or she did not care to look at all[.]" If true, these allegations show that Officer Nail knew of a substantial risk of serious harm to Mr. Losey and failed to intervene to prevent his rape. While we recognize that Mr. Losey's complaint alleges that Officer Nail either did not look into Mr. Whitehead's cell or ignored what she saw, this allegation, combined with his allegation that the standard procedure for an unofficial count is for officers to look into each cell window, is sufficient to show that it is plausible that Officer Nail was deliberately indifferent to a known risk to Mr. Losey. Moreover, none of the factual allegations in support of Mr. Losey's claims against Officer Nail are conclusory. Instead, his allegations rely upon events that Mr. Losey could have observed himself, making them plausible and sufficient to survive a motion for judgment on the pleadings. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (drawing a distinction between conclusory statements and statements that are based on observations and first-hand personal knowledge). Therefore, we conclude that the district court erred in granting the motion for judgment on the pleadings in favor of Officer Nail.

## IV.    Conclusion

For the above reasons, we AFFIRM the district court's order as it relates to Warden Thompson and Officers Bass and Brown. However, we REVERSE the

district court's order as it relates to Officer Nail and REMAND for further

proceedings consistent with this opinion.