**Christopher M. THORNTON and Tiffany Thornton, Plaintiffs,**

v.

**Theodore JACKSON, et al., Defendants.**

**Civil Action No. 1:13–cv–248–TCB.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 21, 2014.

Ethenia F. King, The Firm for Justice & Liberty, LLC, Atlanta, GA, for Plaintiffs.

Larry Wayne Ramsey, Jr., Steven E. Rosenberg, Walter B. Yarbrough, Atlanta, GA, for Defendants.

## *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendants' motion for summary judgment [49].

## I. Procedural Issues

Before addressing the merits of Defendants' motion, the Court must address procedural issues created by Plaintiffs Christopher and Tiffany Thornton's brief in opposition to Defendants' motion.

### A. Format of Brief and Page Limit

Local Rule 5.1(C)(2) requires briefs to be "double-spaced between lines." Although counsel for the Thorntons certifies at the end of the brief that the brief complies with this rule, it does not. At best, the brief has 1.5 spacing. In addition, the improperly spaced brief is twenty-nine pages long, and if properly spaced, the brief would be closer to forty pages. This

exceeds the twenty-five-page page limit imposed by Local Rule 7.1(D), and the Thorntons did not seek prior permission from the Court to exceed the page limit as required.

In their reply brief, Defendants notified the Thorntons of the page-limit issue, and they asked the Court to disregard the excess pages of the Thorntons' opposition brief. Doing so would result in the Court's disregarding the Thorntons' arguments in support of (1) their claims against Defendants Fulton County Sheriff's Office, Fulton County jail, and Fulton County Board of Commissioners, and (2) Tiffany's alleged state-law claim for loss of consortium.[1] Without the Thorntons' arguments in support of these claims, the Court would have to deem the claims abandoned. *See Dees v. Hyundai Motor Mfg. Ala., LLC,* 605 F.Supp.2d 1220, 1226 (M.D.Ala.2009) (A "complete omission of the claim in response to summary judgment is sufficient for a finding of abandonment.").

Even though Defendants raised the page-limit issue in their reply brief, the Thorntons did not seek permission from the Court to respond to Defendants' reply brief or leave to fix their opposition brief. Local Rule 7.1(F) provides that the Court "in its discretion, may decline to consider any motion or brief that fails to conform to the requirements of these rules." Thus, the Court will not consider the portions the Thorntons' opposition brief that Defendants argued should be excluded.[2]

## B. Statement of Facts

Defendants filed with their motion a separate statement of material facts. While the Thorntons did file a brief in opposition to the motion, they did not file a response to Defendants' statement of facts

as required by Local Rule 56.1(B)(2)(a). Pursuant to L.R. 56.1(B)(2)(a)(2), this failure carries with it serious consequences:

This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in L.R. 56.1(B)(1).

By failing to file a separate response to Defendants' statement of facts, the Thorntons have failed to dispute any of Defendants' facts.

The Thorntons did include their own statement of facts at the beginning of their opposition brief. However, this statement is not a substitute for a response. And the inclusion of the facts within the brief does not comply with L.R. 56.1(B)(1) & (2). Defendants pointed out the Thorntons' factual deficiencies in their reply brief, and again the Thorntons did not seek leave from the Court to correct or explain their mistakes.

Consequently, the Court does not consider the facts the Thorntons included in their opposition brief, L.R. 56.1(B)(1)(d), and the Court deems admitted all of the admissible facts set forth in Defendants' statement of facts, *Brandon v. Lockheed Martin Aeronautical Sys.,* 393 F.Supp.2d 1341, 1347–48 (N.D.Ga.2005); *see also Reese v. Herbert,* 527 F.3d 1253, 1268 (11th Cir.2008) ("The proper course in applying

---

1. As explained below, the complaint does not actually include a loss-of-consortium claim; thus the argument in support thereof is irrelevant and would be disregarded anyways.

2. Because the brief is improperly spaced, the Court could exclude an even greater number of pages from consideration than those identified by Defendants but will not.

Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement."); *Postell v. Ryder Truck Rental, Inc.*, 512 Fed.Appx. 977, 981 (11th Cir.2013) (district court properly deemed defendant's facts admitted where plaintiff failed to file response to statement of undisputed facts).

"This procedural error by [the Thorntons], however, does not affect the analysis of [Defendants'] motion. Rather, it merely provides the court an expedient method to cut away the superfluous and irrelevant facts presented by [the Thorntons] in [their] unresponsive submission." *Robinson v. United Parcel Serv., Inc.*, No. 1:06–cv–2601–RLV, 2007 WL 3484743, at *1 n. 2 (N.D.Ga. Nov. 14, 2007). Defendants must still show that there is no genuine dispute as to any material fact, FED.R.CIV.P. 56(a), and that their motion is supported by the evidence submitted, *United States v. 5800 SW 74th Avenue*, 363 F.3d 1099, 1101–02 (11th Cir.2004). The undisputed, material facts are set forth below.

## II. Background

In 2008, Gabriel Banks, an assistant district attorney with the Fulton County District Attorney's Office, prosecuted Christopher Thornton for armed robbery. Christopher was a member of a criminal street gang called the International Robbing Crew ("IRC"), which was formed by residents of New Orleans who relocated to Atlanta after Hurricane Katrina occurred in August 2005. Christopher pled guilty to a reduced count of robbery and was sentenced to three years' incarceration.

In January 2011, Christopher was serving his sentence in Dooly State Prison, which is located in Unadilla, Georgia. As a condition of his sentence, Christopher agreed to testify as an eyewitness in a murder case against George Keon Redding, another member of the IRC. On January 14, 2011, the Superior Court of Fulton County ordered that Christopher be temporarily housed at the Fulton County jail so that he could testify as a material witness at Redding's trial.

On January 20, 2011, Christopher arrived at the jail. On January 24, the superior court issued an order that directed Christopher be kept separate from only fellow inmate Rayshawn Wheeler.[3] On January 27, Christopher was taken to the courthouse to testify. He did not actually testify and was returned to the jail that afternoon. Upon his return, Christopher was assigned to zone 6, south 600, cell 615.

When Christopher was returned to the jail on the afternoon of January 27, he told Defendant David Wells, who is a sheriff's deputy at the jail, that fellow inmates might plot to assault him. Wells then informed Defendant Nayman Taylor, also a sheriff's deputy at the jail, what Christopher said. Taylor then met with Christopher, and when he exited the meeting, Christopher stated that Taylor would call the jail's classification department.

After her meeting with Christopher, Taylor contacted Defendant Veronica Ellison, who was handling the jail's inmate classification the afternoon of January 27, and informed Ellison that Christopher was testifying in a murder trial and wanted to be moved because of fear for his safety. Taylor asked Ellison if Christopher could be moved to protected custody; Ellison responded that she was aware that Christopher was testifying and that cell 615 was

---

**3.** The parties' summary-judgment filings do not explain why the superior court ordered that Christopher and Wheeler be kept separate.

the best location and there was no better place to which he could be moved.

When Taylor repeated her request that Christopher be moved to protected custody, Ellison insisted that he could not be moved. At the time of Taylor's request, there were ten to twelve inmates who were testifying in the Redding trial and who had to be kept separate from each other, i.e., housed on different floors, zones and dorms throughout the jail. This apparently limited where Christopher could be moved.

Typically, if a jail official sought to have an inmate reclassified or moved, the official had to submit a cell-change slip and a report of the threat against the inmate. The official had to investigate the threat, draft a report, and submit the report and cell-change slip to the watch commander. The watch commander would review the documents, and if he approved the cell change he would inform the classification department, which would then relocate the inmate. Both the watch commander and the classification staff had to sign the cell-change slip. According to Ellison, if this procedure had been followed, she would have moved Christopher to a different location.

On January 27, 2011, at approximately 10:25 p.m., Christopher was assaulted in his cell by three other inmates: Ramel Brown, Kendarius Glover and Lavance Taylor. All three inmates were charged with the attack and prosecuted by the Fulton County District Attorney's Office.

On January 23, 2013, the Thorntons filed this action. Plaintiff Tiffany Thornton is Christopher's wife. The Thorntons aver various 42 U.S.C. § 1983 claims for Eighth Amendment violations as well as state-law claims for negligence and intentional infliction of emotional distress. They also seek attorney's fees.

The Thorntons named twelve individual Defendants in their official and individual capacities:

1. Theodore Jackson, Fulton County Sheriff
2. Col. Mark Adger, chief jailer
3. Lt. Col. Stanley Crawford, assistant chief jailer
4. Lt. Col. Reginald Turner, assistant chief jailer
5. Sgt. Veronica Ellison, employee of the Fulton County Sheriff's office and the jail
6. Sgt. Nayman Taylor, employee of the Fulton County Sheriff's office and the jail
7. Sgt. Chris Johnson, employee of the Fulton County Sheriff's office and the jail
8. Deputy David Wells, employee of the Fulton County Sheriff's office and the jail
9. Lt. H. Bryan Turner, division commander
10. Deputy Melvin Bennett, employee of the Fulton County Sheriff's office and the jail
11. Deputy Walter L. Hawkins, employee of the Fulton County Sheriff's office and the jail
12. John Eaves, Chairman of the Fulton County Board of Commissioners

The Thorntons also named the following entities as Defendants:

13. Fulton County Sheriff's Office
14. Fulton County jail
15. Fulton County
16. Fulton County Board of Commissioners.

On November 13, 2013, Defendants filed their motion for summary judgment [49]. Defendants state in their motion that the Thorntons did not serve written discovery

requests upon Defendants, and that the Thorntons took only one deposition, of a non-party named Banks.

### III. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.CIV.P. 56(a). There is a "genuine" dispute as to a material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FindWhat Investor Grp. v. FindWhat.com,* 658 F.3d 1282, 1307 (11th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, however, "a court may not weigh conflicting evidence or make credibility determinations of its own." *Id.* Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.*

"The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the nonmoving party would have the burden of proof at trial, there are two ways for the moving party to satisfy this initial burden. *United States v. Four Parcels of Real Prop.,* 941 F.2d 1428, 1437–38 (11th Cir.1991). The first is to produce "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* at 1438 (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). The second is to show that "there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

If the moving party satisfies its burden by either method, the burden shifts to the nonmoving party to show that a genuine issue remains for trial. *Id.* At this point, the nonmoving party must " 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir.1995) (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

### IV. Analysis

#### A. Violation of the Eighth Amendment's Cruel–and–Unusual–Punishment Clause

The Thorntons bring their federal claims pursuant to § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir.2005). The Thorntons assert that Christopher suffered four violations of his Eighth Amendment right to be free from cruel and unusual punishment as a result of Defendants' deliberate indifference.

They aver in count one of their complaint that Jackson, the Fulton County sheriff, was deliberately indifferent when he failed to provide proper instruction, training and supervision of his deputies to ensure Christopher's safety. The Thorntons contend that this failure resulted from implementation of a policy, executed by Jackson, the sheriff's office, and the jail, that visiting inmates wear jumpsuits in a different color from the inmates regularly housed at the jail.

The Thorntons aver in count two that Jackson was also deliberately indifferent to Christopher's safety when requests that Christopher be moved were ignored. They contend that the requests were ignored because Jackson failed to properly train his deputies.

The Thorntons aver in count three that Defendants failed to take reasonable safeguards to avoid Christopher's assault and thus were deliberately indifferent to his safety.

Finally, they aver in count four that Fulton County failed to train the deputies and thus was deliberately indifferent to Christopher's safety.

As discussed below, the Thorntons cannot show that Christopher suffered a violation of his constitutional rights, and accordingly, Defendants are entitled to summary judgment on the § 1983 claims.[4]

### 1. Eighth Amendment Legal Standard

Jail officials have a duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Thus, jail officials violate the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, "sufficiently serious," and (2) the official had a "sufficiently culpable state of mind." *Id.* at 834, 114 S.Ct. 1970 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Where the constitutional violations are based on a failure to prevent harm as in this case, the "inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm" for the first requirement. *Id.*

And for the second requirement, the official's subjective state of mind must show his "deliberate indifference to inmate health or safety." *Id.* This means that the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837, 114 S.Ct. 1970. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838, 114 S.Ct. 1970. Moreover, officials "who act reasonably" are not liable under the cruel-and-unusual-punishment clause. *Id.* at 845, 114 S.Ct. 1970.

■ Thus, to survive summary judgment on a § 1983 Eighth Amendment deliberate-indifference claim, the Thorntons must produce sufficient evidence of "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995); *accord Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir.2013).

### 2. Objective Requirement

To show that Christopher's constitutional deprivation was objectively "sufficiently serious," the Thorntons must show that Christopher was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Defendants allege that there is no evidence to support the Thorntons' contention that Christopher was imprisoned under such conditions while at the jail. *See*

---

**4.** Because the Court holds that the individual Defendants did not violate Christopher's constitutional rights, the Court need not address their qualified-immunity arguments. *See Jordan v. Sec'y, Dep't of Corr.*, 502 Fed.Appx. 834, 838 (11th Cir.2012) ("because the dis-trict court properly granted summary judgment to Sgt. Murphy as to the Jordan's Eighth Amendment deliberate indifference claim, we decline to address whether Sgt. Murphy was entitled to qualified immunity").

*Four Parcels of Real Prop.*, 941 F.2d at 1437–38 (movant may satisfy initial by showing that "there is an absence of evidence to support the nonmoving party's case" (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548)).

The Thorntons respond that Christopher's assault by three inmates, in and of itself, is sufficient to show that he was incarcerated under conditions posing a substantial risk of serious harm. But they do not provide any cases to support their argument. And while there are not many cases that address the objective requirement (most assume without deciding that it is satisfied), the ones that do not look at the attack in a vacuum as the Thorntons do. Threats to the victim while at the jail and the history of inmate-on-inmate violence at the jail must be considered. *See, e.g., Hale,* 50 F.3d at 1583 (objective requirement satisfied where plaintiff presented evidence that inmate-on-inmate violence occurred regularly (i.e., not a single occasion) when jail was overcrowded, as it was during his attack and preceding two years, and evidence that violence was severe enough to require medical attention and even hospitalization); *Rodriguez v. Sec'y for Dep't of Corr.,* 508 F.3d 611, 617 n. 12 (11th Cir.2007) (risk of harm sufficiently substantial where plaintiff learned that his former gang members wanted to kill him, members had strong presence at jail, and plaintiff received death threats). As discussed below, the evidence properly before the Court does not show a history of inmate-on-inmate violence or repeated threats against Christopher.

 Looking at Christopher's experiences while at the jail, the Thorntons contend that Christopher's red, visiting-inmate jumpsuit, which was a different color from the jumpsuits worn by other inmates regularly housed at the jail, identified him

as a snitch and made him a target for violence. In addition, they contend that the district attorney's office, through Banks, had requested that Christopher be housed in the medical ward, not the general population, so that he could have had his own cell, and that the jail had a custom of doing this with visiting inmates brought in to testify. However, these facts are not properly before the Court as a result of the Thorntons' failure to follow the local rules. In addition, the Thorntons have not provided any evidence that the jail's inmates had a history of attacking visiting inmates because they were perceived as snitches. Thus, there is no evidence to support the Thorntons' argument that Christopher's jumpsuit color and placement in the general population created conditions posing a substantial risk of serious harm.

Looking at the evidence properly before the Court, there is an order from the state court judge requiring that Christopher be kept separate from one other inmate, Wheeler. But the order did not require protective custody or isolation from any other inmates. In addition, Christopher testified that from January 20, when he arrived at the jail, until his attack on January 27, he had not had any problems with other inmates, including his attackers, or jail staff. In fact, Christopher testified that he had previously seen his attackers when he was roaming the hall, and none of them threatened him.

According to the incident report, on the day of his attack Christopher reported to Wells and Taylor that he was concerned for his safety because he had seen inmates talking through the fire-access door between zones 500 and 600 and he *suspected* that the inmates were talking about him. Christopher explained to Taylor that he was at the jail to testify in a high-profile case against an inmate.[5] It is unclear if

---

5. Apparently Christopher did not identify that inmate as Redding when he talked with Wells

Christopher knew the inmates he saw, if he offered additional details to support his suspicion, whether the inmates Christopher saw were the ones who later attacked him, and if the inmates were not his attackers whether they were known to be connected with the attackers, e.g., known members of the IRC or known associates of Redding. Moreover, Christopher did not actually hear what the inmates were saying or inform Wells or Taylor that he had actually been threatened by another inmate. According to the report, Christopher saw some inmates talking and suspected they were talking about him since he intended to testify against another inmate.

These facts do not show that the risk of inmate assault against Christopher was sufficiently substantial for Eighth Amendment purposes. *See Purcell ex rel. Estate of Morgan v. Toombs County, Ga.,* 400 F.3d 1313, 1320–21 (11th Cir.2005) (excessive risk of inmate-on-inmate violence creates substantial risk of harm where evidence shows inmates exposed to constant threat of violence and record did not show serious inmate-on-inmate violence was the norm or something close to it); *cf. Rodriguez,* 508 F.3d at 617 n. 12 (inmate exposed to substantial risk of harm when his former gang members and fellow inmates told him they would kill him and members had strong presence at jail). Thus, the Thorntons cannot show a constitutional violation, and all Defendants are entitled to summary judgment on the Thorntons' § 1983 claims.

Regardless, even if the Thorntons could show that the jail conditions posed a substantial risk of serious harm, they cannot show that the subjective requirement is met.

### 3. Subjective Requirement

For the subjective requirement of an Eighth Amendment deliberate-indifference claim, the Thorntons must show that the jail officials knew of and disregarded an "excessive risk to inmate health or safety." That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. In light of this standard, there are three ways for jail officials to avoid Eighth Amendment liability; they can show

> (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted."

*Rodriguez,* 508 F.3d at 617–18 (quoting *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970).

#### a. Jackson, Adger, Crawford, R. Turner, Johnson, B. Turner, Bennett, Hawkins or Eaves

■ The Thorntons have presented no evidence that Jackson, Adger, Crawford, R. Turner, Johnson, B. Turner, Bennett, Hawkins or Eaves, in either their individual or official capacities, knew the underlying facts indicating a sufficiently substantial danger, i.e., Christopher's report to Wells and Taylor shortly before he was assaulted. Nor have the Thorntons presented evidence that the jail had a history of inmates attacking visiting inmates because their different-colored jumpsuits identified them as snitches such that these

and Taylor, as the report indicates that the

inmate was later identified as Redding.

Defendants would have "subjective knowledge of a generalized, substantial risk of serious harm from inmate violence." *Hale*, 50 F.3d at 1583.

Rather, the Thorntons argue only that these Defendants "had a duty imposed by law to house the prisoners in a safe condition and failed" to carry out that duty.[6] But to establish deliberate indifference, the Thorntons must do more than assert that these Defendants had some kind of duty.[7] *See Losey v. Warden,* 521 Fed. Appx. 717, 719 (11th Cir.2013) (cannot impute actual knowledge to warden based on general nature of warden's job); *Edwards v. Gilbert,* 867 F.2d 1271, 1276 (11th Cir. 1989) (rejecting inmate's attempt to broaden defendants' constitutional duties by contending that defendants violated state laws and regulations, which inmate contended gave rise to right of inmates to certain housing conditions). The Thorntons must show that these Defendants had subjective knowledge of the underlying facts and that the facts created a risk to inmate safety, i.e., these Defendants must have known of a sufficiently substantial risk and knowingly or recklessly disregarded it. The Thorntons have not made this showing and consequently cannot satisfy the subjective requirement for these Defendants. Specif-

ically, the Thorntons have not shown that these Defendants knew about Christopher's report or that the jail had a history of inmate-on-inmate attacks, including attacks on visiting inmates because they were wearing a different-colored jumpsuit that identified them as snitches. *Cf. Hale,* 50 F.3d at 1583 (plaintiff showed, among other things, sheriff knew inmate-on-inmate violence was regularly occurring around time plaintiff was attacked and during other periods of overcrowding and that sheriff could have taken reasonable measures to reduce risk of violence). Thus, these Defendants are entitled to summary judgment on this basis as well.

### b. Wells, Taylor and Ellison

■ The only individual Defendants who might have had subjective knowledge of the underlying facts indicating the risk of Christopher being attacked are Wells, Taylor and Ellison. The record shows that Christopher first told Wells about his fear of attack, and Wells immediately contacted Taylor. Taylor then had a meeting with Christopher to discuss his concerns. During the meeting, Taylor told Christopher that she would take his concerns to classification, and she did. Taylor spoke with Ellison twice to request that Christo-

---

**6.** The Thorntons rely on *McQurter v. City of Atlanta,* 572 F.Supp. 1401, 1419 (N.D.Ga. 1983), for the proposition that a supervisory official may be held liable if he breaches a duty imposed by state or local law and his breach causes the constitutional injury. However, *McQurter* was not addressing the subjective knowledge requirement of an Eighth Amendment deliberate-indifference claim, which cases have made clear that the defendant, among other things, must have actual knowledge of the underlying facts indicating a sufficiently substantial risk. *See Rodriguez,* 508 F.3d at 622 (defendant's duties, discretion and means to determine whether he caused plaintiff's constitutional injury).

**7.** Moreover, although the Thorntons argue that these Defendants violated a legal duty

they do not even argue, much less provide evidence, that these Defendants adopted a policy in violation of their legal duty, classified Christopher in violation of that duty, or imposed a general housing policy for visiting inmates that resulted in deliberate indifference to constitutional rights. *See Staley v. Owens,* 367 Fed.Appx. 102, 108 (11th Cir. 2010) (rejecting plaintiff's contention that supervisory defendant was liable because he failed to segregate prisoners in violation of state statute because plaintiff did not show that defendant adopted policy in violation of statute, no evidence that challenged classification violated statute, and no indication that general housing policy resulted in deliberate indifference).

pher be moved. Both times, Ellison said that Christopher could not be moved due to the number of inmates who had to be housed separately. Thus, these Defendants knew of Christopher's report and that he feared he might be attacked.

However, Defendants argue that they are not liable because Wells, Taylor and Ellison "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Rodriguez,* 508 F.3d at 618. They contend that there is no evidence that Wells, Taylor and Ellison should have known that the risk of harm to Christopher was sufficiently substantial. In response, the Thorntons have cited to testimony from the depositions of Christopher and Banks (the ADA) that allegedly details how the risk was substantial. But this evidence is not properly before the Court due to the Thorntons' failure to comply with the local rules. Thus, these facts will not be considered.

As stated above, the orders from the state court judge did not require that Christopher be placed in protective custody, and directed only that he be kept separate from one other inmate. In addition, from January 20, when Christopher arrived at the jail, until his attack on January 27, he had not had any problems with other inmates, including his attackers, or jail staff. In fact, Christopher testified that he had previously seen his attackers when he was roaming the hall, and they did not threaten him. And on the day of his attack Christopher was concerned for his safety because he had seen inmates talking through a door between zones and *suspected* that the inmates were talking about him; Christopher did not actually hear what the inmates were saying, and he did not tell Wells and Taylor that he had actually been threatened by another inmate.

Rather, Christopher reported that he saw some inmates talking and suspected they were talking about him because he was going to testify against another inmate. And as stated before, there is no evidence properly before the Court that the jail had a history of inmate violence or inmates attacking visiting inmates. *See Hale,* 50 F.3d at 1583 (defendant does not have to know plaintiff would be assaulted or identity of inmate who eventually committed assault, but he must know at very least of generalized, substantial risk of serious harm from inmate violence). Based on these facts, Wells, Taylor and Ellison could have "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Rodriguez,* 508 F.3d at 618. *See also Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir. 1990) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference.") (internal quotations omitted); *accord Staley,* 367 Fed.Appx. at 108–09 (official not liable where no evidence that plaintiff's fear of reprisal from another inmate alerted official to risk of harm to plaintiff from any other inmate).

Defendants also argue that they cannot be held liable because Wells, Taylor and Ellison "responded reasonably to the risk, even if the harm ultimately was not averted." *Rodriguez,* 508 F.3d at 618. "An official responds to a known risk in an objectively unreasonable manner if 'he knew of ways to reduce the harm but knowingly declined to act' or if 'he knew of ways to reduce the harm but recklessly declined to act.'" *Id.* at 620 (quoting *Hale,* 50 F.3d at 1583). Defendants contend that the Thorntons do not have any evidence that Wells, Taylor and Ellison responded to a known risk in an objectively unreasonable manner. Indeed, it is difficult to see how the Thorntons could have such evidence given that they did not serve any written discovery requests upon or

depose these Defendants. And the Thorntons have failed to respond to this argument in their opposition brief.

Looking at the facts properly before the Court, Wells immediately informed Taylor and Taylor in turn told Ellison. Ellison responded that the number of inmates who had to be kept separate prevented Christopher's reclassification. There is nothing to indicate that Wells and Taylor knew of additional ways to act yet knowingly or recklessly declined to do so. *See Jordan,* 502 Fed.Appx. at 837–38 (official's actions were objectively reasonable even though inmate was later attacked when she broke up fight between inmate and his subsequent attacker and waited fifteen minutes to ensure inmate and attacker had cooled off). Moreover, there is no evidence that the jail had a history of inmate-on-inmate violence, including attacks on visiting inmates because of their different-colored jumpsuits and appearance as snitches, and that Wells, Taylor and Ellison knew about this risk and knowingly or recklessly disregarded it.

Ellison did testify in her affidavit that had the cell-change slip been submitted, showing that an investigation revealed Christopher needed to be reclassified, she would have moved Christopher to a different location. But there is nothing in the record showing that Wells and Taylor knew about this form and knowingly or recklessly declined to initiate that procedure. Moreover, there are no details about how long the cell-change investigation could take and whether Christopher could have been moved immediately. *Cf. Rodriguez,* 508 F.3d 611 (defendant had

authority to place inmate in immediate administrative confinement).[8]

Thus, Wells, Taylor and Ellison, in both their official and individual capacities, did not have subjective knowledge of a substantial risk to Christopher's safety that they disregarded. As a result, Christopher did not suffer a violation of his Eighth Amendment right to be free from cruel and unusual punishment at the hands of these Defendants, and they are entitled to summary judgment on the § 1983 claims.[9]

**4. Government Defendants**

Because all of the individual Defendants are entitled to summary judgment on the Thorntons' § 1983 claims against them in their official capacities, the government Defendants these individuals represent—Fulton County, the jail, the sheriff's office and the board of commissioners—are also entitled to summary judgment on the § 1983 claims. *See Vineyard v. County of Murray, Ga.,* 990 F.2d 1207, 1210 n. 3 (11th Cir.1993) ("[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents.").

**B. Fulton County Sheriff's Office, Jail and Board of Commissioners**

The Thorntons' claims against the sheriff's office and jail also fail because neither of them is a legal entity capable of being sued under federal or state law. *See Dean v. Barber,* 951 F.2d 1210, 1214 (11th Cir. 1992) ("[s]heriff's departments and police departments are not usually considered le-

---

**8.** And even if Ellison should have told Wells and Taylor about the cell-change slip or Wells and Taylor should have known to fill out the slip instead of directly contacting Ellison, the Thorntons have not shown that their failure to follow this jail procedure is of Eighth Amendment constitutional magnitude. *See Edwards,* 867 F.2d at 1276 (plaintiff could not broaden

defendants' constitutional duties by contending that they violated state laws and regulations on housing of juveniles in adult jails).

**9.** This includes the § 1983 claims brought against the individual Defendants in their official and individual capacities.

gal entities subject to suit"); *Williams v. Chatham Cnty. Sheriff's Complex,* No. CV407–068, 2007 WL 2345243, at *1 (S.D.Ga. Aug. 14, 2007) ("The county jail ... has no independent legal identity and therefore is not an entity that is subject to suit under § 1983."). Thus, the Court will grant Defendants summary judgment on the all of the claims against the sheriff's office and jail.

As for the Thorntons' federal and state-law claims against the board of commissioners, these claims are duplicative of the claims against Fulton County. *See Grech v. Clayton County,* 335 F.3d 1326, 1342 (11th Cir.2003) (county is "body corporate" capable of suing and being sued although board of commissioners is county governing body). Fulton County has appeared in this action and responded to the Thorntons' allegations. Thus, the Court will grant summary judgment to the board on this basis as well.

### C. Official–Capacity Claims

As stated previously, the Thorntons have sued the individual Defendants in their official and individual capacities. This section addresses alternative bases for granting the individual Defendants summary judgment on the official-capacity claims against them.

#### 1. Eaves

 Eaves is the chairman of the Fulton County Board of Commissioners, and "[f]or liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." *Vineyard,* 990 F.2d at 1210 n. 3; *accord Conley v. Dawson,* 257 Ga.App. 665, 572 S.E.2d 34, 36–37 (2002). Consequently, as long as the municipality received notice and an opportunity to respond, "there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued direct-

ly." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Here, it is undisputed that Fulton County received notice and has responded. Moreover, other than naming Eaves as a Defendant, the complaint fails to attribute any factual allegations to or aver any grounds for relief against Eaves. This further supports the conclusion that the claims against him are duplicative of the claims against Fulton County. Accordingly, the Court will grant summary judgment on the Thorntons' federal and state-law claims brought against Eaves in his official capacity.

#### 2. Sheriff Defendants

The individual Defendants who work for the jail or the sheriff's office—Adger, Crawford, R. Turner, Ellison, Taylor, Johnson, Wells, B. Turner, Bennett and Hawkins—are considered employees of Jackson, the sheriff, not the county. *See Manders v. Lee,* 338 F.3d 1304, 1311 (11th Cir.2003) ("Sheriffs alone hire and fire their deputies. Deputies, including those serving as jailers, are employees of the sheriff and not the county.") (internal citation omitted); *Boswell v. Bramlett,* 274 Ga. 50, 549 S.E.2d 100, 102 (2001) ("[E]mployees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority."); *Lowe v. Jones County,* 231 Ga.App. 372, 499 S.E.2d 348, 350 (1998) (concluding "deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal"). Consequently, the official-capacity claims against these individual Defendants are duplicative of the official-capacity claims against Jackson. Accordingly, the Court will grant summary judgment on the official-capacity claims against these Defendants on this basis as well.

Defendants also contend that all of the sheriff Defendants (including Jackson) are entitled to Eleventh Amendment immunity on the claims against them in their official capacities because they are an arm of the state of Georgia. However, "before reaching an Eleventh Amendment issue, a court should address 'the question [of] whether the statute itself *permits* the cause of action it creates to be asserted against States.'" *Manders,* 338 F.3d at 1328 n. 53 (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 779, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)). If a sheriff and his deputies act on behalf of the State of Georgia when they perform in their official capacities, the "United States Supreme Court has concluded that 'neither a State nor its officials acting in their official capacities are "persons" under § 1983.'" *Molette v. Georgia,* 469 Fed.Appx 766, 768 (11th Cir.2012) (quoting *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

■ Here, the Thorntons challenge the conditions of Christopher's confinement at the jail. Jackson and his deputies "function[ ] as an arm of the State—not of [Fulton] County—when promulgating policies and procedures governing conditions of confinement at the [Fulton] County Jail." *Purcell,* 400 F.3d at 1325. Thus, the sheriff Defendants in their official capacities are not "persons" under § 1983. This is an alternative basis for granting Defendants summary judgment on the official-capacity claims against the sheriff and his deputies, and the Court need not reach Defendants' Eleventh Amendment argument.

### D. Fulton County, Board of Commissioners and Eaves

■ As stated above sheriff deputies are employees of the sheriff, and "under

Georgia's Constitution, the State has exclusive authority and control over the duties and affairs of the sheriff's office." *Manders,* 338 F.3d at 1311. "Although the State requires the county to fund the sheriff's budget, Georgia's Constitution precludes the county from exercising any authority over the sheriff, including how the sheriff spends that budget." *Id.* As a result, "Georgia sheriffs are not county policymakers under § 1983." *Grech,* 335 F.3d at 1343 n. 35. Thus, the Thorntons' § 1983 claims against Fulton County, its board of commissioners, and Eaves (both in his official and individual capacities) fail because none of them has control over the sheriff and his deputies. *See Duffey v. Bryant,* 950 F.Supp. 1168, 1174–75 (M.D.Ga.1997) (granting summary judgment in § 1983 action for the wrongful death of county jail inmate to Cook County Board of Commissioners and its chairman because "[i]t is well-settled in Georgia that a county and its commissioners are without authority over the sheriff or his deputies" and that its chairman "had no responsibility or authority for supervising or training officers").

Similarly, "Georgia courts also speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities." *Grech,* 335 F.3d at 1337. The Thorntons' state-law tort claims all arise from actions taken by Jackson and his employees. Thus, Fulton County, the board of commissioners and Eaves cannot be held liable for these claims either.

Accordingly, the Court will grant Fulton County, the board and Eaves summary judgment on the Thorntons' federal and state-law claims on these bases as well.

### E. Tiffany Thornton's Claims

Defendants contend that all of Tiffany Thornton's claims must be dismissed be-

cause they owed no duty to her. The Thorntons have failed to respond to this argument, which under Local Rule 7.1B indicates a lack of opposition to this argument. Their lack of response also suggests that they have abandoned Tiffany's claims, which supports granting Defendants summary judgment on her claims. *See Dees,* 605 F.Supp.2d at 1226 ("complete omission of the claim in response to summary judgment is sufficient for a finding of abandonment"). Finally, review of the Thorntons' complaint shows that none of their claims avers any basis for Tiffany's entitlement to relief.

In addition to their duty argument, Defendants also argue that Tiffany has failed to include a loss-of-consortium claim in the complaint and thus cannot recover thereunder. The Thorntons did respond to this argument in their opposition brief, but their response is in the portion of the brief that exceeds the page limit and is not being considered. Moreover, even if their response were considered, it would not defeat this portion of Defendants' motion.

The Thorntons argue only that Defendants have failed to show that they are entitled to summary judgment on the loss-of-consortium claim. However, the Thorntons wholly fail to acknowledge that their complaint contains no such claim, making their substantive argument irrelevant. The complaint is devoid of a loss-of-consortium claim, and the Thorntons cannot "raise new claims at the summary judgment stage" through summary judgment briefs. *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314 (11th Cir.2004).

Accordingly, the Court will grant Defendants summary judgment on Tiffany's claims.

### F. State–Law Claims

At this point, the only remaining Defendants for the Thorntons' state-law claims are Jackson, in his individual and official capacities, and Adger, Crawford, R. Turner, Ellison, Taylor, Johnson, Wells, B. Turner and Bennett, in their individual capacities. And these Defendants contend that they are entitled to immunity on the Thorntons' state-law claims, which are negligence and intentional infliction of emotional distress.

#### 1. Negligence

■ Before addressing Defendants' immunity arguments, the Court first addresses the Thorntons' abandonment of one of their state-law claims. In their complaint, the Thorntons aver a claim for negligence. Yet in their opposition brief, they discuss negligent infliction of emotional distress, which is not pled in their negligence claim; the Thorntons do not mention their negligence claim or address Defendants' arguments for summary judgment thereon. Thus, they have abandoned this claim. *See Dees,* 605 F.Supp.2d at 1226.

Moreover, the Thorntons may not amend their complaint through their opposition brief to add negligent infliction of emotional distress as a ground for recovery. *See Gilmour,* 382 F.3d at 1314. At this stage of the case, "the proper procedure for [the Thorntons] to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)," *id.,* which they have not done.[10] Consequently, the Court will not address their arguments in support of such relief and instead will grant Defendants summary judgment on

---

10. In addition, even if the Thorntons moved to amend their complaint to add a claim for negligent infliction of emotion distress, their motion would be denied as futile. A claim for negligent infliction of emotional distress arises from some underlying negligent act; consequently, "[t]here is no independent tort in Georgia for negligent infliction of emotional distress." *Holbrook v. Stansell,* 254 Ga. App. 553, 562 S.E.2d 731, 733 (2002).

this claim in their individual and official capacities.

### 2. Sovereign Immunity

Turning to Defendants' first immunity argument, they contend that Jackson, the sheriff, is entitled to sovereign immunity on the Thorntons' state-law claims against him in his official capacity.

As an initial matter, the Thorntons' state-law claims against Jackson in his official capacity are in reality claims against Fulton County, as he is a county employee. *Nichols v. Prather,* 286 Ga.App. 889, 650 S.E.2d 380, 384 (2007). This is true notwithstanding the Court's determination, *supra,* that Jackson and his deputies are an "arm of the state" for purposes of the § 1983 claims. While sheriffs, under certain circumstances, may be characterized as state actors for purposes of liability under § 1983, they are officials of the county for purposes of liability under state law. *See id.* ("[D]epending on the circumstances, sheriffs may be deemed state agents for the purpose of determining liability for constitutional violations under § 1983 .... [But,] under the plain language of the Georgia Constitution and the GTCA, sheriffs are county officials, not state officers or employees.").

█ In Georgia, "sovereign immunity extends to the state and all of its departments and agencies," and can be waived only by "an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." GA. CONST. art. I, § 2, para. IX(e). And "departments and agencies" of the State include counties. *Gilbert v. Richardson,* 264 Ga. 744, 452 S.E.2d 476, 479 (1994). Thus, Jackson in his official capacity has sovereignty immunity on the state-law claims through Fulton County unless the Thorntons can show otherwise.

The Thorntons have failed to respond to Defendants' sovereign-immunity argument. Their lack of response is fatal to their state-law claims against Jackson in his official capacity. "Sovereign immunity is not an affirmative defense ... that must be established by the party seeking its protection. Instead, immunity from suit is a privilege that is subject to waiver by the State, and the waiver must be established by the party seeking to benefit from the waiver." *Forsyth County v. Greer,* 211 Ga.App. 444, 439 S.E.2d 679, 681 (1993). Neither the Thorntons' complaint nor their opposition brief identifies a state legislative act that waives sovereign immunity under the facts of this case.

Accordingly, Jackson has sovereign immunity on the Thorntons' state-law claims, and they have not shown otherwise. The Court will grant Jackson summary judgment on these claims.

### 3. Official Immunity

Turning to Defendants' second immunity argument, they contend that the sheriff Defendants are entitled to official immunity on the Thorntons' state-law claims against them in their individual capacities. Again, the Thorntons have not responded to this argument.

█ Under the Georgia Tort Claims Act, a "state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50–21–25(a). This is the doctrine of official immunity, and it protects public agents from personal liability for discretionary acts within their official authority and done without willfulness, actual malice, or corruption. *Touchton v. Bramble,* 284 Ga.App. 164, 643 S.E.2d 541, 544–45 (2007). "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." *Tittle v. Corso,* 256 Ga.App. 859, 862, 569 S.E.2d 873, 876 (2002). It does not, however, include "implied malice," that is, "the reckless disregard for the rights or

safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 647 S.E.2d 54, 60 (2007).

■ It is undisputed that the individual Defendants were acting within the scope of their official authority on January 27, 2011. And there is no evidence that any of the individual Defendants acted with willfulness, actual malice, or corruption. As explained above, most of the individual Defendants did not know about Christopher's request. In addition, there is no evidence of a history of inmate violence in general or of inmates attacking visiting inmates because of their different-colored jumpsuits or their reputation as snitches; thus, these Defendants cannot be imputed with knowledge of a danger of this nature and deliberate intention to commit a wrongful act by ignoring that danger.

As for the individual Defendants who did have subjective knowledge of the risk Christopher was exposed to, the record evidence in this case compels the conclusion that Wells, Taylor and Ellison either knew the underlying facts but believed (albeit unsoundly) that the risk was insubstantial or nonexistent or that they responded reasonably to the risk, even though the harm ultimately was not averted. Neither of these scenarios shows willfulness, actual malice or corruption. Indeed, Wells and Taylor immediately reported Christopher's reported threat and request to be moved.

Moreover, the Thorntons did not even mention the word "malice" in their complaint or opposition brief. And the Court will not imply malice from their other arguments in their opposition brief. *See Murphy*, 647 S.E.2d at 60 (implied malice does not satisfy a plaintiff's burden of proving actual malice). Thus, the individual Defendants are entitled to official immunity on the Thorntons' state-law claims against them in their individual capacities.

## 4. Intentional Infliction of Emotional Distress

Finally, the sheriff Defendants are also entitled to summary judgment on the merits of the Thorntons' claim for intentional infliction of emotional distress against them in their individual capacities.

■ A claim for intentional infliction of emotional distress has four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Northside Hosp., Inc. v. Ruotanen*, 246 Ga.App. 433, 541 S.E.2d 66, 68–69 (2000).

■ "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Id.* at 69. Moreover, demonstrating extreme and outrageous conduct is no easy task. It is not enough for the defendant to have "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id.* Instead, this element requires the defendant's conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

■ Here, the sheriff Defendants' actions do not rise to the level of outrageous and extreme conduct. While the Thorntons might argue that their actions (or failure to act) were "tortious or even criminal," Defendants' conduct, as a matter of law, was not extreme and outrageous.

And even if Defendants' actions were outrageous and extreme, the Thorntons

still cannot succeed because they have not properly presented adequate evidence that Christopher's emotional distress was severe. "Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide." *Abdul–Malik v. AirTran Airways, Inc.*, 297 Ga.App. 852, 678 S.E.2d 555, 560 (2009). As a result of their failure to follow the local rules, the Thorntons' evidence of Christopher's emotional distress is not properly before the Court.

In addition, what the Thorntons have presented does not show severe emotional distress. Christopher contends that he cannot sleep and "lives his life constantly on edge" in fear of being "spontaneously attacked." But he has not presented any evidence of medication or treatment sought or of any other symptoms he suffers. Accordingly, the Thorntons' claim for intentional infliction of emotional distress cannot succeed. *See Odem v. Pace Acad.*, 235 Ga.App. 648, 510 S.E.2d 326, 333 (1998) (where plaintiff suffered "mar-

ginally high" blood pressure but sought no professional advice, emotional distress was not severe); *Witter v. Delta Airlines*, 966 F.Supp. 1193, 1201 (N.D.Ga.1997) (anxiety, sleeplessness, overeating, diarrhea and headaches, were not "severe" for purposes of an intentional infliction of emotional distress claim).

### G. Attorney's Fees

The Thorntons' final claim is for attorney's fees. However, because they are not entitled to relief on any of their substantive claims, they cannot recover attorney's fees. Accordingly, the Court will grant Defendants summary judgment on this claim as well.

### V. Conclusion

Defendants' motion for summary judgment [49] is GRANTED. The Clerk is DIRECTED to close this case.